**Sammie BLANKENSHIP et al.,
Plaintiffs-Appellees,**

v.

**SECRETARY OF HEW and the Department of HEW, Defendants-Appellants.**

**No. 76–2342.**

United States Court of Appeals,
Sixth Circuit.

Nov. 24, 1978.

Argued April 4, 1978.

**331**

George J. Long, U. S. Atty., Louisville, Ky., William Kanter, Harry R. Silver, Dept. of Justice, Washington, D. C., Verrell L. Dethloff, Jr., Randolph W. Gaines, Baltimore, Md., for defendants-appellants.

Lawrence Elswit, Legal Aid Society of Louisville, Louisville, Ky., for plaintiffs-appellees.

Before PHILLIPS, Chief Judge, MERRITT, Circuit Judge, and RUBIN,* District Judge.

MERRITT, Circuit Judge.

This class action was brought to challenge delays by the Social Security Administration in scheduling administrative hearings. The plaintiffs are Kentucky applicants for benefits under the Old-Age, Survivors, and Disability Insurance (OASDI) program[1] and the Supplemental Security Income (SSI) program[2] of the U.S. Department of Health, Education and Welfare. Their applications for benefits were initially denied by the state agency and, on reconsideration, by the Secretary of the United States Department of Health, Education and Welfare. The plaintiffs then sought hearings before an administrative law judge, as provided in the statute, to contest the denial of benefits.[3]

The named plaintiffs, who have all experienced delays of more than 30 days in scheduling hearings, sought judicial relief on statutory and constitutional grounds. The District Court certified a class of Kentucky plaintiffs seeking OASDI and SSI benefits who had experienced delays of more than 30 days in obtaining a hearing. The Court took jurisdiction under 28 U.S.C. § 1361 (mandamus) and 42 U.S.C. § 405(g), which provides for judicial review of final decisions of the Secretary. On summary judgment, the Court found that the agency was statutorily and constitutionally required to provide a hearing within a "reasonable time." It further found that delays longer than 90 days were unreasonable, and it ordered the defendants to schedule hearings before an administrative law judge for all members of the class within 90 days of application for a hearing.

We disagree with the 90-day remedy imposed by the District Court and remand with instructions to the lower court to require the Secretary to issue regulations providing for the scheduling of administrative hearings for these applicants and other similarly situated within a specific, reasonable time period.

## I. JURISDICTION

The first issue is whether the court below had jurisdiction to entertain a suit to compel acceleration of the hearing procedures.

---

* Honorable Carl B. Rubin, District Judge, United States District Court for the Southern District of Ohio, sitting by designation.

1. 42 U.S.C. §§ 401–33.

2. 42 U.S.C. §§ 1381–83.

3. 42 U.S.C. § 405(b) and § 1383(c)(1) require that the applicants for benefits whose claims are initially denied by the Secretary receive "reasonable notice and opportunity for a hearing."

We agree with the District Court that 42 U.S.C. § 405(g) provides a basis for jurisdiction. That section states in part:

> Any individual, after any final decision of the Secretary made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action . . . . in the district court of the United States . . . . The court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Secretary . . . .

Although this section on its face appears to bar review until after a "final" decision is made "after a hearing," the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 328, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) construed the section broadly. It held that the section provided jurisdiction over a claim that social security benefits were unconstitutionally terminated without a pretermination hearing. Although the agency procedures provided a right to reconsideration of the decision, the plaintiff instead sought to bring his claim immediately in federal court. In upholding the exercise of jurisdiction over the case, the Supreme Court first concluded that the jurisdictional prerequisite of a "decision" was satisfied because the plaintiff had presented his claim and the claim had been denied by the Secretary. Second, the Supreme Court found that "finality" in the sense of complete exhaustion of remedies is not always necessary. The decision to terminate benefits was sufficiently "final" to warrant immediate judicial review because "a claimant's interest in having a particular issue resolved promptly [may be] so great that deference to the agency's judgment is inappropriate." 424 U.S. at 330, 96 S.Ct. at 900.

Thus the Supreme Court viewed § 405(g) as providing jurisdiction over an issue which was admittedly collateral to the substantive claim of entitlement to benefits. Its analysis on this point appears to apply here. The plaintiffs' claim does not pertain to their entitlement to benefits, but it arose in the context of a request for benefits, and it was raised only after the plaintiffs applied for benefits and received an unfavorable decision.

The Supreme Court's "finality" analysis in *Eldridge* also applies. In *Eldridge*, pursuit of post-termination agency procedures could not provide an adequate substitute for the relief sought, namely, the right to a pretermination hearing. The Supreme Court referred to "the core principle that statutorily created finality requirements should, if possible, be construed so as not to cause crucial collateral claims to be lost and potentially irreparable injuries to be suffered . . . ." 424 U.S. at 331 n. 11, 96 S.Ct. at 901. In the present case as well, pursuit of further administrative remedies would be fruitless, since the delays in those procedures are the very wrong of which plaintiffs complain. This is not a case where taking jurisdiction would circumvent "an orderly administrative mechanism" or contravene a congressional policy regarding the timing of judicial review as in *Califano v. Sanders*, 430 U.S. 99, 102, 106, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

We therefore conclude that § 405(g) provides jurisdiction in this case under the reasoning of *Mathews v. Eldridge*. This conclusion is consistent with decisions by other courts that have considered the issue. *See, e. g., Caswell v. Califano*, 583 F.2d 9, at 14 (1st Cir. 1978) and cases cited.

In light of this conclusion we find no need to reach the remaining contentions of the plaintiffs that 28 U.S.C. § 1361 and 28 U.S.C. § 1331 also provide jurisdiction. We note only that a number of courts in similar cases have found that, in the absence of any other adequate remedy, 28 U.S.C. § 1361 provides a basis for jurisdiction. *See, e. g., Caswell v. Califano, supra*, at 13 n. 8 and cases cited therein.[4]

## II. MOOTNESS

All of the named plaintiffs received disability hearings before the District Court

---

4. The defendants suggest on appeal that the District Court improperly certified a class of plaintiffs under Rule 23(b)(2), Fed.R.Civ.P. We find the defendants' contentions to be without

granted class certification. Consequently, the defendants contend therefore that the suit should be dismissed as moot.

■ Admittedly, the named plaintiffs can no longer complain that they have failed to receive a hearing, and any court-ordered relief to accelerate hearing procedures would have no effect on them. The claims of delay which the plaintiffs advance, however, epitomize the type of claim which continually evades review if it is declared moot merely because the defendants have voluntarily ceased the illegal practice complained of in the particular instance. Thus, the defendants may expedite processing for any plaintiffs named in a suit while continuing to allow long delays with respect to all other applicants. As in *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 765, 35 L.Ed.2d 147 (1973), refusal to consider a class-wide remedy merely because individual class members no longer need relief would mean that no remedy could ever be provided for continuing abuses. We therefore conclude that the class members retain a live interest in this case so that the class action should not be declared moot, and the class certification should "relate back" to the date of the filing of the complaint, when the named plaintiffs had not yet received hearings or hearing decisions. *See Sosna v. Iowa*, 419 U.S. 393, 402 n. 11, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975).

## III. RIGHT TO A HEARING WITHIN A "REASONABLE" TIME

The plaintiffs' right to a hearing to contest a denial of benefits is not disputed. An opportunity for a hearing is explicitly required by 42 U.S.C. §§ 405(b) and 1383(c)(1). The central issue, rather, is whether the Secretary must provide a hearing within a given time period.

The hearing provisions regarding both OASDI and SSI benefits require simply that the Secretary shall provide "reasonable notice and opportunity for a hearing" if benefits are denied at the reconsideration level. 42 U.S.C. §§ 405(b), 1383(c)(1). The provisions regarding SSI benefits further state that a "[d]etermination on the basis of such hearing, except to the extent that the matter in disagreement involves the existence of a disability . . . shall be made within ninety days after the individual requests the hearing . . . ," 42 U.S.C. § 1383(c)(2), but this section does not apply to the present claims because the dispute in all instances involves the existence of a disability.

■ The Administrative Procedure Act establishes similar requirements. The provisions of 5 U.S.C. § 555(b) state in part: "With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." Furthermore, 5 U.S.C. § 706(1) provides that on judicial review a court shall "compel agency action unlawfully withheld or unreasonably delayed." These statutory provisions are applicable to the agency defendants here under the terms of the Act.[5]

■ Clearly then, under the applicable statutes, the class members in this case

merit. The practicability of joining all members of the class does not appear to be in question. The plaintiffs contend that delays beyond a certain period are unreasonable *per se* under applicable statutes and the Constitution, regardless of unique factors in particular situations. The issues of statutory and constitutional "unreasonableness" are therefore common to all members of the class, and the claims advanced by the named plaintiffs in this regard are typical of the class. We perceive no conflict of interest or antagonism among class members.

5. Neither the APA nor the statutes establishing the SSI and OASDI programs exempt the Social Security Administration from APA requirements. We therefore reject the defendants' contention that the APA "reasonable time" provisions do not apply. Previous cases in which this Court has applied the APA to Social Security claims include *Hunt v. Weinberger*, 527 F.2d 544 (6th Cir. 1975); *Woods v. Richardson*, 465 F.2d 739 (6th Cir. 1972); *Maddox v. Richardson*, 464 F.2d 617 (6th Cir. 1972).

have a right to a hearing and the Secretary has a duty to provide a hearing within a "reasonable" time. Discerning what Congress viewed as "reasonable" when it enacted the relevant legislation, however, is a difficult task. As one court commented, "There are no absolute standards by which it may be determined whether a proceeding is being advanced with reasonable dispatch. What is reasonable can be decided only in the light of the nature of the proceedings and the general and specific problems of the agency . . . ." *Deering Milliken, Inc. v. Johnston*, 295 F.2d 856, 867 (4th Cir. 1961).[6]

In the present case we find on the one hand ample evidence that there is no dilatory motive on the part of the agency, and that limited resources have been insufficient to meet a dramatically increased case load. On the other hand, it is clear from the evidence presented as well as from the eligibility requirements that many applicants are destitute and seek benefits for the necessities of life. Substantial hardship can result from delays in such circumstances. Obviously, lengthy delays are less tolerable in this context than, for example, in the area of commercial regulation.

The evidence presented in the court below shows that on the national level the median length of time between hearing request and hearing decision was 220 days as of July, 1975.[7] These hearing delays throughout the nation in both the SSI and OASDI programs are matters which have been considered by a number of courts. All of the decisions of which we are aware find that the delays have been unreasonably long, and that the courts must impose some time limits despite the admitted administrative burdens faced by the agency. *Caswell v. Califano*, 538 F.2d 9 (1st Cir. 1978); *Barnett v. Califano*, 580 F.2d 28 (2d Cir. 1978); *Wright v. Mathews*, No. 75 C 1537 (N.D. Ill., June 6, 1977). Such results have also been reached in cases involving similar delays in other public assistance programs. *White v. Mathews*, 559 F.2d 852 (2d Cir. 1977); *Like v. Carter*, 448 F.2d 798 (8th Cir. 1971).

For the same reasons discussed at length in those opinions, we believe that the delays faced by the plaintiffs in the present case are unreasonable and contrary to the agency's statutory mandate. Because we reach our decision on statutory grounds, we find no need to address the constitutional issues raised.

## IV. CHOICE OF REMEDY

The District Court, in light of the agency's failure to conduct hearings in a "reasonable" time, required all hearings for the plaintiff classes, after a short grace period, to be conducted within 90 days of the date of request. The First and Second Circuits have imposed similar 90-day time limits.[8] In considering the appropriateness of this remedy we must focus on whether it is in keeping with the intentions of Congress, which did not impose a specific time limit, and whether the 90-day limit is practicable.

---

**6.** *Compare, e. g., Chromcraft Corp. v. United States Equal Employment Opportunity Comm'n*, 465 F.2d 745 (5th Cir. 1972), *International Ass'n of Machinists and Aerospace Workers, AFL–CIO v. Nat'l Mediation Bd.*, 138 U.S.App.D.C. 96, 425 F.2d 527 (1970), *F. T. C. v. J. Weingarten, Inc.*, 336 F.2d 687 (5th Cir. 1964), *with Environmental Defense Fund, Inc. v. Hardin*, 138 U.S.App.D.C. 391, 428 F.2d 1093 (1970), *Deering Milliken, Inc. v. Johnston*, 295 F.2d 856 (4th Cir. 1961), *American Broadcasting Co. v. F. C. C.*, 89 U.S.App.D.C., 298, 191 F.2d 492 (1951).

**7.** The experience of the named plaintiffs in the present case illustrates the nature of the delays. Ida O'Neil requested a hearing on October 8, 1974. The hearing was held on June 13, 1975.

Mildred Bell requested a hearing on January 29, 1975. It was held on June 20, 1975. Margaret Burr sought a hearing on August 20, 1974. It was scheduled for July 2, 1975. Lucille Miller requested a hearing on September 6, 1974. It was scheduled for July 10, 1975. Sammie Blankenship requested a hearing on November 20, 1974. It was scheduled for July 29, 1975. All of the named plaintiffs ultimately received favorable hearing decisions, approximately a year to a year and a half after initially filing for benefits.

**8.** *Caswell v. Califano*, 583 F.2d 9 (1st Cir. 1978); *Barnett v. Califano*, 580 F.2d 28 (2d Cir. 1978).

The relevant statutes contain no specific time requirements for convening a hearing before an administrative law judge although many other public assistance statutes contain mandatory deadlines of 90 days. In fact, the statutory provisions governing SSI benefits require a hearing decision within 90 days of a hearing request, but hearings on disability questions are explicitly exempt from this requirement. 42 U.S.C. § 1383(c)(2).

█ The legislative history of the 1976 amendments affecting the two programs also suggests that Congress considered the imposition of a uniform, specific deadline in all cases, but rejected the idea. After lengthy hearings on the nature and cause of delays in the Bureau of Hearings and Appeals,[9] Congress amended existing statutes in a number of ways, providing in particular for additional administrative law judges to conduct hearings, but it left unchanged the broad "reasonable notice and opportunity for a hearing" requirement.[10] Legislation also before Congress which would have imposed definite time limits did not pass.[11]

As plaintiffs point out, the Department of Health, Education and Welfare told Congress that statutory reforms should cut delays to no more than 90 days by June, 1977, and a plausible conclusion is that one of the underlying goals of the legislation was eventually to reduce hearing delays to 90 days. Nevertheless, it is important to note that while a major reduction in hearing delays was certainly one purpose of the legislation, neither 90 days nor any other fixed period was made mandatory under the statute itself. It appears that Congress specifically confronted and discussed the possibility of imposing a hearing deadline, but, after deliberation, rejected this alternative in favor of retaining the more flexible principle of a "reasonable" time period.[12] In view of this congressional determination, we do not believe that a judicially imposed 90-day limit is appropriate or consistent with the principle of separation of powers.

Another factor also concerns us. The agency states that compliance with the District Court's order will merely result in shifting resources from other parts of the country to handle hearings in Kentucky, thereby aggravating hearing delays in other areas. Although we must be primarily concerned with the plaintiffs before the court, the problems raised are nationwide problems, and we must also consider the possible national repercussions of any remedy we impose.

Delay is a serious problem for both the federal courts and some federal administrative agencies. Simplistic and unreasonably short time limitations imposed from the outside without a thorough understanding of the reasons for the problem will frustrate welfare administration, just as it would frustrate judicial administration. In 1971, more than 4,000,000 claims were filed under the Social Security Act, and that figure is expected to increase dramatically during the next 40 years as the number of citizens reaching retirement age also increases. If the statute or the Constitution is interpreted mechanically to require a 90-day time limit, unalterable regardless of the circumstances, it may make government unworkable. See Schwartz & Wade, *Legal Control of Government* 124–31 (1972). Mr. Justice Blackmun has reminded us in another context in *Richardson v. Perales*, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426, 28 L.Ed.2d 842 (1971) that "the [social security] system's administrative structure and proce-

9. *Delays in Social Security Appeals: Hearings Before the Subcomm. on Social Security of the House Comm. on Ways and Means*, 94th Cong., 1st Sess. (1975).

10. P.L. 94–202, 89 Stat. 1135, Jan. 2, 1976, 42 U.S.C. §§ 401, 405, 418, 1381, 1383, 1395. *See* S. Rep. No. 94–550, explaining the purpose of P.L. 94–202, 1975 U.S. Code Cong. & Admin. News, Vol. 2, pp. 2347–52.

11. H.R. 5276, 94th Cong., 1st Sess. (1975), proposed by Rep. Seiberling, contained a 120 day limit.

12. *See* authorities cited in notes 10 and 11 *supra*.

dures, with essential determinations numbering into the millions, are of a size and extent difficult to comprehend." Justice Holmes' aphorism in *Bain Peanut Co. v. Pinson*, 282 U.S. 499, 501, 51 S.Ct. 228, 75 L.Ed. 726 (1931)—"We must remember that the machinery of government would not work if it were not allowed a little play in its joints"—is worth considering when we deal in this area of administrative structure and statistics so "difficult to comprehend" and manage.

While expressing these reservations about the remedy granted by the District Court, we also believe that courts may not abdicate their role and deny any effective remedy because the problem is difficult. In this instance, the Secretary's rule-making power contained in 42 U.S.C. § 405(a), a power expected to "fill the gaps" in the flexible legislative mandate enacted by Congress, provides the most appropriate solution for the problem of unreasonable delay. The agency should be given an opportunity to develop a nationwide rule providing substance to the "reasonable notice and opportunity for a hearing" requirement in a way that will not frustrate welfare administration and will not merely encourage "stop-gap" measures to the detriment of other areas of the country or other programs. It is our view that elaboration of the "reasonable time" requirement by rule-making is the preferable remedy. This is the approach taken by Judge (now Chief Justice) Burger in *Gonzalez v. Freeman*, 118 U.S.App.D.C. 180, 334 F.2d 570, 577–80 (1964) and approved by Davis, *Administrative Law of the Seventies Supplementing Administrative Law Treatise* § 6.13 (1976).

We, therefore, order the Secretary to exercise his rule-making power by formulating rules and regulations establishing reasonable time limits for conducting hearings for the OASDI and SSI programs. The judgment below is vacated, and the case is remanded to the District Court with instructions to order the agency to develop and submit to the District Court for approval regulations designed to remedy the problem of unreasonable delay in these programs. The Secretary shall submit such regulations to the District Court for review within one hundred twenty days following the date the mandate in this case is received and filed in the District Court. The Secretary should submit the proposed regulation to the District Court for review before it is published as a proposed or final regulation in the Federal Register. The District Court will review the reasonableness of the provisions contained in the proposed rules and regulations and enter such further orders as may be appropriate in light of the principles and reasoning enunciated in this opinion.