**Sammie Gail BLANKENSHIP, et al., Plaintiffs,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

**Nos. C 75–0185 L(A), C 76–0441 L(A).**

United States District Court,
W. D. Kentucky,
Louisville Division.

April 20, 1981.

Barry Master, Legal Aid Society, Louisville, Ky., for plaintiffs.

Alexander T. Taft, Jr., U. S. Atty., Louisville, Ky., Verrell L. Dethloff, Jr., Baltimore, Md., for defendant.

## MEMORANDUM OPINION

ALLEN, Chief Judge.

The motion now before the Court in this matter, i. e. the motion of the Secretary of Health and Human Services (hereinafter the Secretary) that certain regulations signed by the Secretary of August 21, 1980, be allowed to be published as final regulations, represents the latest step in a case first filed in this Court in 1975.

Plaintiffs in this class action have, throughout the litigation, challenged delays in hearing procedures afforded to appli-cants for benefits under the Old Age and Survivors' Disability Insurance and Supplemental Security Income (O.A.S.D.S.I. and S.S.I. respectively) programs, which are created by statute at 42 U.S.C. Sec. 401 et seq. and 42 U.S.C. Sec. 1381 et seq., respectively.

In our original memorandum opinion, issued May 6, 1976, we found that jurisdiction vested in the Court by virtue of 42 U.S.C., i. e. that section of the Social Security Act providing for appeal in the United States District Courts, and 28 U.S.C. Sec. 1361, the Federal Mandamus Act. We further held that the Social Security Administration is required to hold redetermination hearings following adverse administrative reconsideration of their claims for disability benefits within a reasonable time. This requirement we found in the reading of 42 U.S.C. Sec. 405(b) and 42 U.S.C. Sec. 1383(c)(1), each of which provides for reasonable notice and opportunity for a hearing, and that section of the Administrative Procedure Act, 5 U.S.C. Sec. 555(b), which provides that administrative adjudications be provided within a reasonable time.

We further held that it was appropriate for the district court to order that such hearings be held, and determinations issued, within a time limit set by the Court. To this end, we ordered that, after a short grace period, hearings would be held and determinations issued within 90 days after the filing of a request, subject to certain enumerated exceptions.

The Sixth Circuit Court of Appeals later held that while our opinion was well founded in other respects, we had used a somewhat inappropriate criterion for determining what time is reasonable, and further, that it was incorrect for the Court to order a set time for the processing of hearing requests. *Blankenship v. Califano*, 587 F.2d 329 (6th Cir. 1978). We were instructed to order the Secretary to promulgate regulations which set a time limit for that action, and to allow the publication of those regulations if we deemed them to provide a reasonable remedy.

On December 3, 1979, this Court issued a memorandum opinion and order allowing the publication of regulations which the Secretary called "experimental," which set a 90-day limit for the scheduling of hearings, and an additional 30 days for the issuance of the Administrative Law Judge's (hereinafter ALJ) opinion, subject to certain enumerated exceptions. That order provided certain amendments aimed at the elimination of possible delay; it also provided for Court supervision of compliance.

On August 26, 1980, the Secretary moved the Court to allow publication of final regulations signed by the Secretary on August 21, 1980, which provide for an overall time limit of 165 days, abolish the sub-limit for the scheduling of hearings, and make certain other changes from the regulations earlier approved by this Court. For the reasons which we will discuss in some detail *infra*, we have concluded that we must approve those regulations subject to two requirements discussed *infra*.

In our initial opinion we viewed "reasonableness" largely from the perspective of the plaintiff, based on our perception that the resources of SSI claimants are virtually nonexistent, and those of OASDI claimants are generally limited. We must now consider the motion presented by the Secretary in what the Sixth Circuit has called "a broader context," *Blankership, supra,* at p. 331.

The Sixth Circuit points out, at p. 332, that Congress has been continually aware of the Social Security delay "crisis" and has taken some ameliorative measures short of imposing a statutory deadline. The Sixth Circuit further notes that those measures have not been equal to the problem.

The Court of Appeals instructs us that administrative delay should be assessed in terms of whether there is some evidence of dilatoriness or lack of evenhandedness on the part of the agency, id. at p. 352, citing Goldman, *Administrative Delay and Judicial Relief,* 66 Mich.L.Rev. 1423 (1968) and *F.T.C. v. Weingarten, Inc.,* 336 F.2d 687 (5th Cir. 1964); *Deering-Milliken Inc. v. Johnston,* 295 F.2d 856 (4th Cir. 1961); *Safir v. Gibson,* 417 F.2d 972 (2nd Cir. 1969); and *American Broadcasting Company v. FCC,* 191 F.2d 492 (D.C. Cir. 1951).

The Sixth Circuit further quotes the Supreme Court as cautioning against the courts "engrafting their own notions of proper procedures upon agencies entrusted with substantive functions by Congress," *Vermont Yankee Nuclear Power Corp. v. National Resources Defense Council, Inc.,* 435 U.S. 519, 525, 98 S.Ct. 1197, 1202, 55 L.Ed.2d 460 (1978).

■ It is, then, our understanding of the "broader context" that we must give some deference to the exigencies of the administrative process, even if they result in delays that the claimants might justifiably if subjectively view as unreasonable. The Secretary maintains that the changes embodied in the regulations now proposed are necessary because of the increased workload between the beginning of 1980 and the filing of the motion now before us, which can be expected to increase further. At the time that the Secretary filed the motion now before the Court, the 90-day deadline was not being met in approximately 30% of cases, and the 30-day deadline was not met approximately 20% of the time. We agree with the Secretary that a deadline which cannot be met in so significant a proportion of the cases is not meaningful. The Secretary argues that the results were as good as they were only through extraordinary concentration of resources in the area affected by our prior order (we assume that the Secretary has made extraordinary efforts also in those circuits in which the Court of Appeals has approved time limitations imposed by district courts.) The Secretary claims the existence of a backlog of cases whose resolution can be expected to take 160 days, and notes that his workload can be expected to increase further based on a 1980 statute which mandates the administrative review of many of the determinations which were initially favorable to claimants, i. e., P.L. 96–265, 94 Stat. 453, Sec. 304.

The plaintiff argues, quite cogently, that the Secretary now has means at his disposal

for speedy adjudications that have been unavailable before, including a larger ALJ corps, 400 staff attorneys, increased support staff and word processing equipment, and recently promulgated regulations intended to expedite hearing decisions.

It is nonetheless the Secretary's position that the current heavy case load and the increased number of applications which must reasonably be anticipated for the near and intermediate future overwhelm those increased resources.

■ This Court is now in a position of having to decide this matter when it comes before us in a legal and procedural posture which, so far as we are able to learn, is unprecedented. The Sixth Circuit has handed down a mandate which, as we understand it, has given us the authority only to review the regulations put forth by the Secretary on the basis of reasonableness. The Sixth Circuit has further told us that an average time of 220 days between request for hearing and issuance of decision is unreasonable. We have approved one set of regulations, and the Secretary, after attempting to function under those regulations, has returned and told us that what was reasonable before is no longer reasonable. It is nowhere suggested that the Secretary is operating in bad faith; rather the plaintiff sees the data submitted to the Court by the Secretary as susceptible to the interpretation that there is room for improvement in the Secretary's performance. This may be true, but we do not believe we are capable of decreeing that the information before us demonstrates that it is true. We do believe that for reasons discussed in some detail *infra*, it may ultimately be demonstrated that the Secretary can operate within a lesser time limit. It is with this in mind that we find it necessary to undertake supervision of the Secretary's performance under the regulations whose publication the order accompanying this memorandum allows.

The primary objective of that supervision will be to give vitality to our holding that the proposed regulations are only marginally acceptable and must be subject to periodic revision in favor of the plaintiff at the earliest time that such revision would be reasonable in light of the Secretary's capabilities. We will, therefore, order the Secretary to supply us, every six months beginning six months from the date of the accompanying order with the following data: the number of ALJ's assigned to administration offices which process significant numbers of applications by Kentucky residents, and the change, if any, from the prior number so serving; the number of applications for benefits made within the preceding six months and the change in the total number of applications from the six months' period immediately preceding the reported period; any changes in eligibility requirements and their projected effect on caseload and speed of disposition; any significant changes in the numbers of support personnel and the projected impact on caseload of those changes; and the total number of cases on file compared with the number of cases on file at the end of the prior six months' period.

The Secretary shall also inform the Court on each reporting date of the number of cases whose adjudication was completed within the 165-day deadline, the number of cases in which the adjudication was not so completed, and the reason for the failure to comply in those cases where the deadline is not met, i. e. whether the delay was initiated by the claimant or by the Social Security Administration. Copies of these data are to be mailed to plaintiffs' counsel when they are submitted to the Court.

In the event that these data cause the Court to believe that the 165-day limit approved herein is no longer reasonable under the circumstances applying at that time, it will deem the motion of the plaintiff in opposition to the approval of the regulations herein approved to be resubmitted. The defendant will, in such event, be so notified and will have all rights he would have on the plaintiff's original motion. The part of the accompanying order calling for periodic submission of data shall continue in effect until vacated by the Court.

The real thrust of this memorandum is not, however, those actions which this Court takes to ensure that the new regulations operate within a reasonable manner or to encourage the eventual promulgation of regulations more palatable to claimants who are, indisputably, frequently in the direst of need. The thrust of this opinion is its approval of the proposed regulations signed by the Secretary on August 21, 1980, a decision which has been reached only after much deliberation, and with some trepidation. This decision does not reflect the preferences of the Court, nor its interpretation of how the needs of claimants should be served. It rather results from our reading of the mandate of the Sixth Circuit as instructing us that the defendant's operational limitations must be considered in defining "reasonableness," together with the Secretary's insistence that he cannot function under our last prior order, has led us to adopt some of the reasoning set out in *Wright v. Califano*, 587 F.2d 345 (7th Cir. 1978), insofar as it does not conflict with the Sixth Circuit in *Blankenship, supra.*

The *Wright* court holds that short of convincing allegations of constitutional deprivations, hearing decision delays present a nonjusticiable issue in that Congress, which allocates fiscal resources to the Secretary, is well aware of the delay problem and has, indeed, held extensive hearings on the question. It has nonetheless declined to exercise its prerogative of setting statutory time limits, or of requiring that the Secretary set regulatory time limits. The Seventh Circuit decided that where Congress has the clear power to give concrete meaning to the "reasonable dispatch" standard and has consistently declined to do so, it is inappropriate for the courts to force on the Secretary their own interpretation of a reasonable time limit. The Sixth Circuit has found the time limit question to be an appropriate area for judicial intervention to the extent that it is proper for a district court to require the Secretary to promulgate regulations which, in the Secretary's judgment, address the problem and then to in effect exercise veto power over those regulations if they are unreasonable.

From December of 1979 until the present, the Secretary has operated under the interim regulations; we assume that it was some time prior to the motion now before the Court that the Secretary decided that current and projected caseloads and lack of resources, i. e. apparently irremediable strictures on the size of the ALJ corps, among other problems, made it impossible to function under the regulations approved by this Court. The Secretary further maintains that the minimum time in which he can even approach total compliance is 165 days, with no internal deadline for a hearing date. The one concrete improvement offered from the claimant's standpoint is that allowable delays beyond the final deadline for reasons not attributable to claimants are eliminated.

The Sixth Circuit has told us that it is not appropriate for the courts to abdicate their responsibility to require the Secretary to fill in legislative gaps to the end of insuring that claims are processed within a reasonable time, but it is the Secretary rather than the Court who is obliged by the mandate of the Sixth Circuit to come forward with a proposed reasonable time for disposition of claims at the hearing level. The Sixth Circuit has also told us that reasonableness must be viewed not only from the point of view of the claimant, but also based on a realistic assessment of the capabilities of the government. Unless we now disbelieve the government which we have no basis for doing, we will be in the position of ordering the Secretary to do something which he maintains that actual experience and educated projections of the Administration demonstrate is not possible. At this juncture, we believe that it does not contradict our mandate, then, to adopt the approach of the Seventh Circuit to the extent that we find that if sweeping corrective action is taken, it must come from Congress. We have called for the Secretary to promulgate regulations which create time limits where none existed before. We believe that these regulations fulfill the Sixth Circuit's definition of reasonableness. Our mandate does not permit us to impose on the Secretary

duties which he cannot perform anymore than the separation of federal powers allows us to allocate resources enabling their performance.

The 165-day limit is itself uncomfortably close to the 220-day median time expressly found unreasonable by the Court of Appeals. Any substantial delay beyond 165 days would take the adjudication of an individual claim outside the congressionally prescribed reasonable time. If, as is entirely possible, the maximum time becomes more or less the typical time for adjudications, even a relatively low percentage of cases in which there are lengthy delays beyond the 165-day limit could skew the average determination time toward a figure approaching that found unreasonable. We do not at all doubt the earnestness with which the Secretary has pursued, and will pursue, the goal of adjudication in a manner as rapid as is compatible with fairness and administrative exigencies. We nevertheless cannot wholeheartedly approve regulations with which very slight noncompliance could lead to the wholesale violation of the "reasonable time" requirement, whose protection is for now in our hands.

It is with some dismay that we note that there is within the proposed regulations no provision for any sanction against the Secretary, or for any safeguard for the claimant whose adjudication is delayed beyond the prescribed period. An acceptable sanction would not only provide some incentive to the Secretary to meet the deadline in as many cases as possible, it would provide some interim relief to the claimant in whose case administrative action is continued beyond 165 days.

We, therefore, impose the condition that the Secretary, within 60 days of the date of entry of the order accompanying this memorandum, submit to this Court a proposed regulation which would serve the dual function of creating an incentive for compliance over and above the mere existence of the regulatory deadline, and of providing some interim relief for claimants. It appears to this Court that allowing such applicants the option of beginning payment of benefits, subject to recoupment by the Secretary should those applicants be determined by the ALJ not to be entitled to benefits might be a workable, albeit an imperfect, solution to the very real problem of potentially unreasonable delays in the event that the deadline is not met for reasons not attributable to the claimant. Of course, we will give due consideration to any proposed amendment which will in the opinion of the Secretary, effectuate the policy set out *supra*.

The precise language of the Sixth Circuit's instructions to the Secretary, and to this Court, is as follows:

"The Secretary should submit the proposed regulation to the District Court for review before it is published as a proposed or final regulation in the Federal Register. The District Court will review the reasonableness of the provisions contained in the proposed rules and regulations and enter such further orders as may be appropriate in light of the principles and reasoning enunciated in this opinion." *Blankenship, supra,* at p. 336.

We read the concluding sentence as telling us that we are not limited to accepting or rejecting the regulations submitted to us in the exact form in which they were promulgated, but that we may use our power of entering further appropriate orders to call for the fine-tuning of the regulations.

It is with that goal in mind that we adjudge that the regulations may be adopted with the proviso that the Secretary shall amend them in order to provide an effective enforcement mechanism, and submit that amendment to this Court for its approval.

An order in accordance herewith has this day been entered.