Sammie Gail **BLANKENSHIP,** et al., Plaintiffs,

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

Georgia **FINCH,** et al., Plaintiffs,

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

Civ. A. Nos. C 75–0185 L(A), C 76–0441 L(A).

United States District Court, W. D. Kentucky, Louisville Division.

Feb. 17, 1982.

See also D.C., 517 F.Supp. 77 and 522 F.Supp. 618.

Brian P. Lawlor, Barry L. Master, Legal Aid Society, Louisville, Ky., Henry A. Freedman, Alan H. Kleinman, Daniel M. Taubman, Center on Social Welfare, New York City, for plaintiffs.

Ronald E. Meredith, U. S. Atty., Louisville, Ky., Verrell L. Dethloff, Jr., Baltimore, Md., for defendant.

## MEMORANDUM OPINION

ALLEN, Chief Judge.

These consolidated actions are submitted to the Court for decision upon the motion of

the plaintiffs to modify the previous class action orders, and upon the motion of the defendant to vacate the previous injunctive orders of this Court, and to dismiss this action with prejudice. Extensive briefs have been filed by the parties.

Coming first to the motion to modify the class orders, the original class order in *Blankenship*, insofar as applicable, provided:

Plaintiff Class A is composed of all Kentucky residents who have applied for SSI, who have been denied benefits at both the original decision level and the reconsideration level, because of a finding of no disability, and have made timely written application for a hearing, but who have had no hearing within thirty (30) days of application.

Plaintiff Class B is composed of all Kentucky residents who have applied for OASDI, who have been denied benefits at both the original decision level and the reconsideration level, because of a finding of no disability, and have made timely written application for a hearing, but who have had no hearing within thirty (30) days of application.

On November 21, 1975, this definition was modified to exclude those persons residing in the Eastern District of Kentucky who were exclusively seeking SSI benefits. This was done because of the existence of a pending Title XVI action in which class certification was sought challenging alleged hearing delays in the Eastern District of Kentucky, see *Sturgill v. Mathews*, Civil Action No. 75–288. Plaintiffs now propose to enlarge the *Blankenship* class as follows:

The plaintiff class in *Blankenship* is composed of all Kentucky residents who have requested or do request a hearing pursuant to Sec. 205(b) or Sec. 1631(c) of the Social Security Act, to appeal from the denial, reduction, termination, or suspension of benefits under Title II and/or Title XVI of the Social Security Act, who are not receiving continuation of benefits pending the hearing, and who have not received a decision within thirty (30) days of their request.

On February 27, 1978, the Court entered a class action order in *Finch* certifying the class as follows:

The plaintiff class consists of all present and future persons in the Commonwealth of Kentucky who have received supplemental security income; who have had said benefits terminated by the Department of Health, Education and Welfare because it was held that they were not disabled and thus not eligible; who have contested said decision; who have been denied benefits at the administrative hearing level; who have appealed said adverse decision to the Social Security Appeals Council; but who have not received any decision from the Appeals Council within thirty (30) days after their application.

Plaintiffs now ask the Court to certify a class in *Finch* to be composed of all Kentucky residents who have requested or do request, pursuant to 20 C.F.R. Secs. 404.968 and 416.1468, that the Appeals Council review a hearing decision or the dismissal of a hearing request which affirmed a denial, reduction, termination, or suspension of benefits under Title II and/or Title XVI of the Social Security Act and have not received a final decision on their request within thirty (30) days of their request.

■ Defendant objects to the motions on two basic grounds. The first is that class action relief is inappropriate. This argument represents an attempt by the defendant to argue the merits of the case which is not appropriate in a motion to certify a class. The Supreme Court in *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) has held that it is inappropriate for a trial court to inquire into the merits of a proposed class action case before ruling on the class action aspects and upon the motion of the class action certification. Defendant's first ground, therefore, is without merit.

■ The second argument made by the defendant with regard to the *Finch* case is that the named plaintiff, Georgia Finch, brought her claim under Title XVI and is

now seeking to represent individuals filing under Title II. A litigant must be a member of the class he or she seeks to represent. See *Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975) and *Shipp v. Memphis Area Office, Tennessee Department of Security*, 581 F.2d 1167 (6th Cir. 1978). Defendant's objection with respect to the extension of class coverage in *Finch* from individuals filing under Title XVI to individuals filing under Title II and/or Title XVI is well taken and is sustained.

The next objection defendant has as to the *Finch* proposed modification is that it covers Kentucky residents who appeal a hearing decision or request which affirmed a denial, reduction, termination, or suspension of benefits, whereas the previous order covered those Kentucky residents who had previously received SSI and had the benefits terminated. Here the distinction between termination, reduction and suspension of payments is relatively minimal, whereas the distinction between applicants for benefits and recipients whose benefits are being terminated is a major one.

We believe that Ms. Finch should be allowed to represent those recipients under Title XVI whose benefits have been suspended or reduced, but not those persons who are applying for benefits and who have been denied.

Finally, the *Finch* proposed modification would include nondisability claimants who have a statutory right to a hearing within 90 days, see 42 U.S.C. Sec. 1383(c)(2). The fact that they do receive such a congressionally mandated hearing within 90 days reflects Congress' perception of the substantial difference which exists as between nondisability claims and disability claims. We do not believe that this proposed modification is warranted at this time, particularly in light of the fact that Ms. Finch is not a claimant under the nondisability claim provisions.

■ Plaintiffs in Blankenship now request a modification which would enlarge the class from those who had been denied benefits at the original decision level and the reconsideration level because of a finding of no disability to include those persons whose benefits have been terminated, reduced or suspended. It is apparent that there are significant differences, both legally and factually, with regard to those persons who are first applying for benefits and those who, having had their benefits granted at one time, have had them terminated. Because of those differences, we do not believe that it would be appropriate to enlarge the Blankenship class in this respect.

The defendant has no objection to that part of the Blankenship class motion which pertains to the reincorporation of the members of the putative class in *Sturgill v. Mathews, supra*; therefore, the original class certified by this Court on September 30, 1975 will be recertified.

Addressing now the defendant's motion to vacate the previous orders of the Court and to dismiss the action with prejudice, we first will recount in some detail the legal history of this case and the all important decision of the United States Court of Appeals for the Sixth Circuit in *Blankenship v. Secretary of Health, Education and Welfare*, 587 F.2d 329 (1978). In that case the Appellate Court reversed this Court's holding that HEW was "statutorily and constitutionally" required to provide a hearing within 90 days of application for a hearing. The Appellate Court pointed out that both 42 U.S.C. Sec. 405(b) and 42 U.S.C. Sec. 1383(c)(1) state that the Secretary shall provide " 'reasonable notice and opportunity for a hearing' if benefits are denied at the reconsideration level." The Appellate Court also pointed out that 5 U.S.C. Sec. 555(b) and 5 U.S.C. Sec. 706(1) require administrative agencies to proceed within a reasonable time to conclude matters presented to them, and further provided that "a court shall 'compel agency action unlawfully withheld or unreasonably delayed.' " See p. 333.

The Court went on to state that the evidence showed that the "median length of time between hearing request and hearing decision was 220 days as of July, 1975 and held that the delays were unreasonable and contrary to the agency's statutory mandate.

The Court specifically made no decision on the constitutional issue in light of its statutory interpretation.

While the Court pointed out that it did not believe that a judicially-imposed 90-day limit was appropriate or consistent with the principle of separation of powers, see 587 F.2d at 335, it went on to state that "we also believe that courts may not abdicate their role and deny any effective remedy because the problem is difficult." It therefore ordered the Secretary to exercise its rule-making power by formulating rules and regulations establishing reasonable time limits for conducting hearings. The Court went on to hold that the Secretary should submit regulations to the District Court for review within 120 days following the date the mandate of the Court was filed in the District Court. It also held that the District Court should review the reasonableness of the provisions contained in the proposed rules and regulations and enter such further orders as might be appropriate. See p. 336.

Subsequent to the entry of the appellate opinion, this Court filed its opinions in *Blankenship v. Secretary*, 517 F.Supp. 77 (D.C.Ky., 1981) and *Blankenship v. Secretary*, 522 F.Supp. 618 (D.C.Ky., 1981). In the first of these two opinions, this Court noted that it had on December 3, 1979, allowed the publication of experimental regulations which provided a 90-day limit for the scheduling of hearings and an additional 30 days for the issuance of the Administrative Law Judge's (herein ALJ) opinion, subject to certain enumerated objections. On August 26, 1980, the Secretary moved the Court to allow publication of final regulations, which provided for an overall time limit of 165 days and abolished the sublimit on the scheduling of hearings and made certain other changes.

In the opinion at 517 F.Supp. 79 and 80, this Court held that it would approve the 165-day time limit subject to the duty of the Secretary to supply the Court with data which would enable the Court to determine whether the 165-day limitation was no longer reasonable. Finally, this Court noted that there were no sanctions provided for in the rule or any safeguards for the claimant whose adjudication was delayed beyond the 165 days. The Secretary was, therefore, ordered to submit to the Court a proposed regulation which would serve the dual function of creating an incentive for compliance and of providing some interim relief for the claimants. See p. 82.

Following this Court's decision in 517 F.Supp. 77, defendant tendered proposals entitled "administrative initiatives" which included the taking of administrative action against ALJs who failed to conform to the established time limits. This Court held that taking action against an ALJ simply failed to recognize the deprivation of the rights of a claimant and the resultant hardships, see p. 620. The Court again reiterated its thinking that a delay beyond the designated time limits could only be corrected by commencing payment of benefits, subject to the right of recoupment. Also, the Court called attention to the delay which resulted from the Secretary's decision not to publish the regulations which were proposed over a year previous to the Court's decision. Finally, the Court pointed out that the scope of its review was difficult to determine as was the scope of its authority, and therefore, granted leave to the parties to take an interlocutory appeal. That avenue was not pursued by either of the parties.

The defendant now takes the position that he no longer has the duty to publish any rules and regulations providing for time limits because he contends that the caseload burden imposed upon him has mushroomed to such an extent that he cannot meet any time limits. He proposes that, in lieu of time limits, he be allowed to publish a notice of average processing time goals in the Federal Register. In support of his increasing caseload argument, defendant cites statistics which, if accurate, reflect that the caseload has increased from approximately 72,000 in fiscal year 1973 to 252,000 in fiscal year 1980, and 281,737 in fiscal year 1981.

During that same period, the average number of ALJs on duty increased from 420 in fiscal year 1973 to 669 in fiscal year 1980 and 699 in fiscal year 1981. Over the same period, the average support staff doubled and the average disposition per ALJ slightly more than doubled. Also, the average number of cases pending before an ALJ increased from 117 in fiscal year 1973 to 128 in fiscal year 1981.

In addition, the defendant contends that it is difficult to recruit ALJs and difficult to retain them, and that an employment freeze also presented a problem.

Plaintiffs' response to these arguments is to the effect that defendant is bound by the law of the case doctrine and by the decision of the Sixth Circuit Court of Appeals, and that the circumstances have not changed in such a drastic manner as to warrant this Court in disregarding the opinion of the Appellate Court. Plaintiffs further point out that the suggestion of the defendant regarding a notice of average process time goals in the Federal Register is not a satisfactory substitute for the publishing of rules and regulations which would define process time limits and those exceptions which would justify cases being adjudicated at times in excess of the time limits.

We believe that the plaintiff has the better of these arguments. The Sixth Circuit was well aware of the burgeoning caseload faced by the Secretary. In its opinion, it referred to the fact that more than four million claims were filed under the Social Security Act in 1971, and stated that that figure is expected to increase dramatically during the next forty years, as the number of citizens reaching retirement age also increases. See 587 F.2d at 335.

While the Sixth Circuit was sympathetic to the problems faced by the Secretary, as illustrated by its language at pp. 335 and 336, it further held that the courts may not abdicate their role and deny any effective remedy because the problem is difficult. The Court found that a median length of time between hearing requests and hearing decisions of 220 days was unreasonable and contrary to the statutory mandate imposed upon the agencies. 587 F.2d at 334.

■ We believe that if the Secretary's views were to prevail, this Court would be abdicating its responsibilities as delineated by the Sixth Circuit Court of Appeals. We, therefore, hold that it is the duty of the Secretary to publish and promulgate rules and regulations which shall provide that the maximum time between hearing requests and hearing decisions shall be 180 days, subject to exceptions which were specifically approved by the Court of Appeals for the Second Circuit in *Barnett v. Califano*, 580 F.2d 28 (1978). These exceptions are:

"(a) The claimant or his representative causes a delay by his failure to provide information essential for adjudication;

(b) the claimant or his representative request(s) a delay;

(c) the claimant or his representative fails to appear for a scheduled hearing;

(d) other action or omission directly attributable to the claimant or his representative." See p. 30.

The Court believes that, despite the protests of the Secretary, this is a reasonable solution to the problem presented in this case. We note that the time limit now allowed by this Court is double the time limit that was found acceptable by the court in *Barnett v. Califano, supra.* We note, also, that the 180 day time limit is not too far removed from the 220 day time limit which the Sixth Circuit held was unacceptable and in violation of plaintiff's rights.

■ With regard to the rights of the *Finch* class, the Secretary had proposed that the time between submission to the Appeals Council and decision should be 90 days. The Secretary has stated in his brief, which was originally filed in support of the Appeals Council regulations, that the 90-day limit is long enough, so that the vast majority of claimants can expect to have their cases completed within that time, yet it is enough to challenge the Agency to improve its performance relative to those cases that are not. See p. 12 of his memorandum. In addition, it appears from the brief of the Secretary that in March, 1981, 93% compliance with the 90-day standard was reached.

No appeal was taken from this Court's decision in *Finch*, and the Sixth Circuit has not otherwise addressed the issue of Appeals Council delays. The Appeals Council stage is the final in a four-stage procedure involved in processing a claim: action on original application, action on request for reconsideration, request for hearing and decision by an ALJ, and action by the Appeals Council upon request for review.

It would appear to this Court that the same principles which apply to hearing decision delays are applicable to Appeals Council delays. The statutory scheme does not mention the Appeals Council as such, although 42 U.S.C. Sec. 405(b) provides authorization for the Secretary

> to hold such hearings and to conduct such investigations and other proceedings as he may deem necessary or proper for the administration of this subchapter.

Throughout the subchapter appears such language as the "findings and decisions of the Secretary." So long as an unsuccessful claimant continues to pursue his or her administrative remedies, there is no final decision by the Secretary until the Appeals Council action is concluded. If there were rules and regulations only with respect to the original hearing process and none as to the Appeals Council process, it is conceivable that delays in the latter could frustrate Congress's intention that Social Security matters be disposed of within a reasonable time.

The Sixth Circuit observed in *Blankenship*;

> (M)any applicants are destitute and seek benefits for the necessities of life. Substantial hardship can result from delays in such circumstances. 587 F.2d at p. 334.

No less hardship is produced by delay at the Appeals Council stage than is produced by delay at the hearing stage. We, therefore, direct that the Secretary publish in the Federal Register those rules and regulations relating to time limits at the Appeals Council level which he had previously stated was his intent to publish.

■ With respect to possible sanctions and other relief sought by the plaintiffs, the Court believes that the only effective relief which could be granted, insofar as individual claimants are concerned, is that of granting interim benefits subject to recoupment to claimants at the hearing level who have not received a hearing within the 180-day limit. Such procedures were approved by the Court in *Barnett v. Califano, supra.* Defendant contends that this Court has no authority to award such a remedy and relies on *United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976) and *Tatum v. Mathews*, 541 F.2d 161 (6th Cir. 1976). In both of those cases it was held that retroactive payments to persons who have been deprived of benefits may not be ordered by a court without express authorization from Congress. However, *Barnett v. Califano, supra*, points out that 42 U.S.C. Sec. 1383(b) allows the Secretary discretion to forego recovery of overpayments.

While this is not the exact equivalent of awarding interim benefits subject to recoupment, it is our belief, in accordance with *Barnett v. Califano, supra*, and *White v. Mathews*, 559 F.2d 852 (2nd Cir. 1977), cert. denied, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978), that this is the only practical, equitable solution to the difficult problem of balancing administrative difficulties and wage-earners' needs. Without such a requirement, this Court's orders will have no teeth and no remedy will be available to the plaintiffs, except the unsatisfactory one of contempt proceedings against the Secretary.

■ Finally, the Court rejects the plaintiffs' theory that the claimant, in the event of a delay beyond the time limits, should be able to sue in the District Court. There is no provision in the statutes for such a procedure, contrary to the situation in Title VII cases, where the statute specifically provides that if the EEOC does not take action on a discrimination charge within 180 days, it would notify the aggrieved person and he may then bring a civil action within 90 days. 42 U.S.C. Secs. 2000e–16, 2000e–5(f)(1). The Court does agree, however, with plaintiffs' suggestion that the defendant be monitored as to the manner in which

he complies with the regulations to be published, and with the suggestion that reports be furnished to the Court at intervals of three months, reflecting the degree of compliance by the defendant with the Court's orders.

A judgment in accordance with this opinion has been entered this day.

## JUDGMENT

The defendant, having moved to vacate the previous injunctive orders of this Court and to dismiss this action with prejudice, and plaintiff, having moved to modify the previous class action orders, and the Court, having filed its memorandum opinion and being fully advised in the premises,

IT IS ORDERED AND ADJUDGED as follows:

1. The plaintiff class in *Blankenship* is certified as being composed of all Kentucky residents who have applied for Supplemental Security Income (SSI) or Old Age Security Disability Insurance (OASDI) benefits pursuant to Sections 205 or 1631(c) of the Social Security Act, and who have been denied benefits at both the original decision level and the reconsideration level because of a finding of no disability and have made timely written application for a hearing but have had no hearing within thirty (30) days of application.

2. Plaintiffs' motion to modify the *Finch* class is sustained in part and denied in part and the plaintiff class in *Finch* is certified as consisting of all present and future residents of the Commonwealth of Kentucky who have received SSI pursuant to Title XVI of the Social Security Act and who have had said benefits terminated, reduced or suspended by the Department of Health and Human Services because it was held that they were not disabled and, thus, not eligible; who have contested said decision; who have been denied benefits at the administrative hearing level; who have appealed said adverse decision to the Social Security Appeals Council; but who have not received any decision from the Appeals Council within thirty (30) days after their application.

3. The Secretary of Health and Human Services, the defendant herein, is ORDERED to publish in the Code of Federal Regulations regulations which shall provide that the maximum time between hearing requests and hearing decisions of persons who have applied for disability benefits under Title II and Title XVI of the Social Security Act shall be 180 days, subject to the following exceptions:

(a) Claimant or his representative causes a delay by his failure to provide information essential for adjudication:

(b) Claimant or his representative requests a delay;

(c) Claimant or his representative fails to appear for a scheduled hearing;

(d) Other action or omission directly attributable to the claimant or his representative.

Said regulations shall be promulgated and published in the Code of Federal Regulations within sixty (60) days after entry of this judgment.

4. The Secretary of Health and Human Services, the defendant herein, is ORDERED to publish in the Code of Federal Regulations rules and regulations which shall provide that as to any persons who have received SSI and who have had their benefits terminated, suspended or reduced by the defendant because it was held that they were not disabled and not eligible, and who have contested the decision, and who have been denied the continuation of said benefits at the administrative hearing level, and who have appealed said adverse decision to the Social Security Appeals Council, that said decision be made within ninety (90) days after the application is received, subject to the following exceptions:

(a) Claimant or his representative requests a delay;

(b) Other action or omission directly attributable to the claimant or his representative.

IT IS FURTHER ORDERED AND ADJUDGED that the defendant shall pay interim benefits, subject to recoupment, to

claimants at the hearing level who have not received a hearing within the 180-day limit, and where there are no exceptions applicable to that limit, provided that the first payment of interim benefits shall be made 30 days after the 180-day time limit has expired, and that other payments shall be continued for each 30 days thereafter until the Secretary has reached a decision.

IT IS FURTHER ORDERED AND ADJUDGED that the defendant shall submit to the Court on June 15, 1982 and every ninety (90) days thereafter until further orders of the Court a written report with sufficient factual information to enable the Court to determine whether or not the Secretary has been able to comply with the orders of this Court, and whether or not the plaintiff classes are receiving the timely hearings and appeal procedures which this Court has set out in its opinion and judgment.

IT IS FURTHER ORDERED AND ADJUDGED that plaintiffs' claims for other relief are denied.

This is a final and appealable judgment and there is no just cause for delay.