Carroll **BARNETT** and Harold **McBrine,** on behalf of themselves and all others similarly situated, Plaintiffs-Appellees,

v.

Joseph A. **CALIFANO,** Jr., Secretary of Health, Education, and Welfare, Defendant-Appellant.

No. 1000, Docket 77–6166.

United States Court of Appeals, Second Circuit.

Argued June 7, 1978.

Decided June 29, 1978.

---

Zander B. Rubin, St. Johnsbury, Vt. (Vermont Legal Aid, Inc.), for plaintiffs-appellees.

Robert Varnum, Baltimore, Md., Atty., Dept. of Health, Ed. and Welfare (Barbara Allen Babcock, Asst. Atty. Gen., George W. F. Cook, U. S. Atty., Rutland, Vt., Randolph W. Gaines, Chief of Litigation, Baltimore, Md., of counsel), for defendant-appellant.

Before KAUFMAN, Chief Judge, FEINBERG, Circuit Judge, and WERKER, District Judge.*

FEINBERG, Circuit Judge:

The Secretary of the Department of Health, Education and Welfare appeals from various orders of the United States District Court for the District of Vermont, Albert W. Coffrin, J., granting summary judgment in this class action suit brought by disability claimants under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–85.[1] This appeal, like our recent decision in *White v. Mathews,* 559 F.2d 852 (2d Cir. 1977), cert. denied, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978), concerns "the glacial pace at which the Social Security Administration (SSA) has adjudicated claims to disability payments." Id. at 854.

Since we find appellant's attempts to distinguish that case unpersuasive, the orders of the district court are, with one significant modification, affirmed.

I

Title XVI, as promulgated in 1972, was "designed to provide financial assistance to needy people who have reached age 65 or are blind or are disabled . . .." H.R. Rep. No. 92–231, 92d Cong., 1st Sess. 25 (1971), reprinted in [1972] U.S.Code Cong. & Admin.News, pp. 4989, 5012. The application procedure for Supplemental Security Income (SSI) benefits under Title XVI is virtually identical to that involved in obtaining the Title II benefits at issue in *White v. Mathews,* supra, 559 F.2d at 854–55. Thus, an SSI disability claimant must establish both his financial eligibility and his income impairing disability under the applicable federal standards. See generally 20 C.F.R. Part 416. The initial determination of disability is made by the appropriate state agency in accordance with the Secretary's regulations.[2] See 20 C.F.R. § 416.920(a). Thereafter, the SSA may review the information filed by the applicant and revise the state's decision. See 20 C.F.R. § 416.920(c). A claimant who still feels aggrieved is then entitled to a full evidentiary hearing before an administrative law judge. See 42 U.S.C. § 1383(c); 20 C.F.R. § 416.1425–57. The hearing officer's decision may be further reviewed by the Appeals Council of the SSA, see 20 C.F.R. § 416.1458–61, and the final determination of the SSA is subject to judicial review. See 42 U.S.C. §§ 1383(c)(3), 405(g).[3]

---

* Hon. Henry F. Werker, District Judge of the Southern District of New York, sitting by designation.

1. Title XVI of the Social Security Act provides Supplemental Security Income for the financially destitute aged, blind, and disabled. See 42 U.S.C. § 1381a.

2. If a state chooses not to enter into an agreement with the SSA concerning SSI benefits, the SSA itself makes the initial determination. See 20 C.F.R. § 416.920(b). Apparently, Vermont does provide a disability determination service.

3. 42 U.S.C. § 1383(c) provides as follows:

> (c)(1) The Secretary is directed to make findings of fact, and decisions as to the rights of any individual applying for payment under this subchapter. The Secretary shall provide reasonable notice and opportunity for a hearing to any individual who is or claims to be an eligible individual or eligible spouse and is in disagreement with any determination under this subchapter with respect to eligibility of such individual for benefits, or the amount of such individual's benefits, if such individual requests a hearing on the matter in disa-

Appellees are all disability claimants who were originally denied SSI benefits and were subsequently unable to obtain administrative hearings without substantial delays despite their timely requests for such hearings. For example, appellee Barnett filed for SSI benefits in February 1974. That request was initially denied on March 22, 1974 and was again denied upon reconsideration on May 31, 1974. Barnett requested a hearing in June 1974. When no hearing had been granted by November of that year, Barnett and others filed this suit. Barnett eventually received a hearing in December 1974, which resulted in the reversal of the prior administrative decisions denying him SSI benefits.

The complaint alleged that protracted delays in obtaining hearings, such as those suffered by Barnett, violated appellees' right to due process and also their statutory rights under the Social Security and Administrative Procedure Acts. In May 1975, Judge Coffrin held that mandamus jurisdiction existed over this action, and in January 1976 the judge granted class certification.[4] In February 1977, the district court found that SSI disability claimants in Vermont typically waited 6 to 7 months for a hearing with delays as long as 13 months.[5] The district judge's thorough opinion concluded that such delays denied appellees the "reasonable . . . opportunity for a hearing" guaranteed by Title XVI, 42 U.S.C. § 1383(c)(1), and also ran afoul of the pertinent provisions of the Administrative Procedure Act. See 5 U.S.C. §§ 555(b), 706(1).[6] He therefore ordered appellant on or before July 1, 1977 to reduce "the maximum delay between the proper filing of a petition for a hearing . . . and the scheduling and holding of such hearing to 120 days and by December 31, 1977 . . . [to] have further reduced such maximum delay to 90 days." Judge Coffrin further ordered that non-refundable benefits be paid to any claimant not receiving such a timely hearing unless the delay was attributable to certain narrow exceptions.[7] This appeal followed.

greement within sixty days after notice of such determination is received, and, if a hearing is held, shall, on the basis of evidence adduced at the hearing affirm, modify, or reverse his findings of fact and such decision. The Secretary is further authorized, on his own motion, to hold such hearings and to conduct such investigations and other proceedings as he may deem necessary or proper for the administration of this subchapter. In the course of any hearing, investigation, or other proceeding, he may administer oaths and affirmations, examine witnesses, and receive evidence. Evidence may be received at any hearing before the Secretary even though inadmissible under the rules of evidence applicable to court procedure.

(2) Determination on the basis of such hearing, except to the extent that the matter in disagreement involves a disability (within the meaning of section 1382c(a)(3) of this title), shall be made within ninety days after the individual requests the hearing as provided in paragraph (1).

(3) The final determination of the Secretary after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Secretary's final determinations under section 405 of this title.

4. In his memorandum opinion, the judge defined the class as "all present and future [Vermont] applicants for SSI disability benefits whose initial claims are denied on a finding that no disability exists and who subsequently request a reconsideration hearing." Such a definition properly included claimants for SSI benefits only and those who had claims for both SSI and Title II benefits, so-called concurrent claimants.

5. This finding, which was based on stipulated facts, is not challenged on appeal. A substantial proportion of the delay is attributable to hearing requests by concurrent claimants, see note 4 supra.

6. The district court did not reach appellees' constitutional claims. In view of our disposition of this case, we do not decide whether these substantial delays violated either the due process clause or the Administrative Procedure Act.

7. The district judge's order dated April 12, 1977, contained the following four exceptions to the designated time periods:

(a) the claimant or his representative causes a delay by his failure to provide information essential for adjudication;

(b) the claimant or his representative request[s] a delay;

(c) the claimant or his representative fails to appear for a scheduled hearing;

(d) other action or omission directly attributable to the claimant or his representative.

## II

At the outset, we note that appellant argues that no jurisdiction exists for this action and that the class was improperly certified. While we do not think that these arguments are frivolous, the same contentions were rejected by our recent opinion in *White v. Mathews,* supra, 559 F.2d at 855–56, 858. Finding no reason to reconsider those holdings here, we conclude that the district court had mandamus jurisdiction to hear this case, see 28 U.S.C. § 1361, and that it correctly certified the class of SSI disability claimants.

The litigants quite properly focus their attention on *White v. Mathews,* supra. We there held that administrative hearing delays similar to those challenged here[8] did not constitute a "reasonable . . . opportunity for a hearing" within the meaning of section 205(b) of the Social Security Act, 42 U.S.C. § 405(b) (Title II). Appellees urge that *White* is therefore dispositive since Title XVI also guarantees a "reasonable . . . opportunity for a [disability] hearing." See 42 U.S.C. § 1383(c)(1), quoted in note 3 supra. We agree with appellees, at least insofar as appellant generally raises anew claims that were made in *White.* Thus, we again reject the Secretary's argument that the district court erred in specifying time limits for SSI disability hearings because Congress, which has acted to alleviate the hearing delay problem,[9] has chosen not to quantify a reasonable time period. As we stated in *White,* "Congress did not abandon the requirement of reasonableness, and the decision not to impose precise limits should not be interpreted as an endorsement of the delays." 559 F.2d at 859–60. Similarly, while we are still "sympathetic to the administrative problems that beset the SSA," we reiterate our conclusion that such difficulties do not justify the denial of a "reasonable . . . opportunity for a hear-

ing." See id. at 859. This is especially true when, as typified by Barnett's own case history, such hearings often correct erroneous determinations denying SSI benefits to penurious disability claimants.[10] However, appellant offers several specific reasons why *White* should not be controlling here, and we turn to these contentions.

First, appellant points out that unlike Title II, Title XVI has prescribed a 90-day time limit for all non-disability determinations. See 42 U.S.C. § 1383(c)(2), quoted in note 3 supra. However, statutory designation of a time within which non-disability claims must be decided does not preclude a district court from fixing a time for the holding of disability hearings, which Congress requires to be conducted with reasonable dispatch. The enactment of section 1383(c)(2) cannot be read as a legislative abandonment of the reasonable opportunity requirement contemporaneously approved in section 1383(c)(1). Moreover, the requirement of section 1383(c)(2) that non-disability cases be determined within 90 days indicates the fairness of Judge Coffrin's less burdensome order mandating that disability cases be heard, but not decided, within 90 days.

The Secretary also claims that *White* is distinguishable because that case involved Title II claimants, while this one concerns Title XVI claimants. However, both programs provide benefits for the disabled—a group defined almost exactly alike by Titles II and XVI. Compare 42 U.S.C. § 423(d)(1)(A) with id. § 1382c(a)(3)(A). Furthermore, as between the two groups of similarly beset beneficiaries, SSI disability claimants, who are by definition impoverished and thus less likely to have alternate sources of sustenance, see *Mathews v. Eldridge,* 424 U.S. 319, 340–43, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), are in greater need of prompt hearings. Cf. id. at 342–43 n. 27, 96 S.Ct. 893 (Title XVI beneficiaries, unlike their Title II counterparts, are entitled to

8. The district judge in *White* found the delays to average 211.8 days, see 559 F.2d at 855, which is substantially equivalent to the delays involved in this appeal.

9. See Pub.L. No. 94–202, 89 Stat. 1135 (1976).

10. In 1975, the reversal rate of unfavorable determinations against SSI disability claimants was 45.7% nationwide and 35.9% for Region I, which includes Vermont.

pretermination hearings.) [11] Appellant also contends that *White* is not controlling because Title II applicants have contributed to the Social Security System, which pays their benefits, and thus have some sort of quasi-contractual claim to them. But in defining what constituted a reasonable opportunity to be heard under the statute, the *White* court focused upon the "immediate and often severe hardships" accompanying disability and not the nature of the right to the disability benefits. See 559 F.2d at 858.

Appellant also argues that intervening administrative developments in Vermont particularly and in the nation generally suggest that a *White* -type order is improper here. However, the efforts made in Vermont parallel those in Connecticut that we found in *White* to be commendable but inadequate. See id. at 859. Appellant also points to the flurry of similar orders concerning hearing delays entered against the Secretary in various parts of the country. See, e. g., *Caswell v. Califano*, 435 F.Supp. 127 (D.Me.1977), appeal docketed, No. 77–1514 (1st Cir. Nov. 30, 1977). Such orders, if anything, would seem to support our conclusion in *White*. But appellant responds that such decisions exacerbate rather than solve the hearing delay problem. Appellant's point is that SSA has thus far been able to meet various court-imposed timetables only by shifting personnel around, that its resources are limited, and that as the number of such orders grows it "will simply be unable to comply with them. . . ." We do not minimize the difficult situation in which SSA finds itself, and we repeat our emphasis in *White* that the solution for the problem may well ultimately depend upon congressional action. 559 F.2d at 861. But we are called upon to decide whether the substantial delays suffered by appellee claimants deprived them of a "reasonable . . . opportunity for a hearing." For

the reasons already given in *White* and in this opinion, we believe that appellees were so deprived.

Finally, we are cited to the Final Report Study of the Social Security Administration Hearing System (Center for Administrative Justice 1977) as representing "a major new development [since *White*] in the factual context of the SSA hearings problem." But that Report does not reject "time limits as a reasonable response to the overall problem," as appellant suggests. Indeed, the Report recognizes that claimants are likely to suffer "great damage" and "high psychic costs" from delays in the disability determination process—findings which support the decision of the district court here. See id. at 57–58. In any event, we do not view the Report as "a major new development" justifying our reversal, in effect, of *White*.

### III

Finally, we focus our attention on the terms of the relief granted by Judge Coffrin.[12] The order approved in *White* eventually required a *determination* of disability in most cases within 120 days of a request for a hearing on that issue. See id. at 855. Judge Coffrin ultimately imposed a 90-day limit on the delay in the *holding of hearings,* also subject to certain exceptions. See note 7 supra. On their face, the two orders are quite comparable. Indeed, holding a hearing within 90 days would seem to be less of a burden for the SSA in most cases than determining the disability issue within 120 days, as in *White*. Additional evidence may be sought by the hearing officer after the hearing has been held, see 20 C.F.R. § 416.1441, and the actual rendering of decisions may often take more than 30 days. Cf. *Wright v. Califano*, [1977–78 Transfer Binder] Unempl. Ins. Rep. (CCH) ¶ 15,272, at 2499–206 (N.D.Ill.1977), appeal docketed,

---

11. We thus find unpersuasive appellant's argument that the existence of pretermination hearings under Title XVI but not under Title II made the order proper in *White* but improper here. The Supreme Court's decision in *Mathews v. Eldridge,* supra, indicates that Title II claimants are arguably less in need of prompt administrative action. Moreover, the existence of pretermination hearings is of little solace to

those, like appellees, who have been initially denied SSI benefits.

12. As in *White,* the Secretary argues that payment of interim benefits to claimants who are not accorded a timely hearing violates the Social Security Act. We adhere to our ruling there that the district court has power to grant such equitable relief. See 559 F.2d at 860–61.

Nos. 78–1174 & 1175 (7th Cir. Feb. 8, 1978) (most Title II cases are decided more than 90 days after hearing). Furthermore, while appellant is correct that the SSA was given a greater lead time to comply with the time limit in *White* than was provided for here, we are not convinced that 10 months was insufficient lead time given the circumstances in Vermont and the less onerous 90-day provision involved here. We therefore find no abuse of discretion in the time schedule imposed by Judge Coffrin on the SSA. See, e. g., *Caswell v. Califano*, supra, 435 F.Supp. at 136.

The Secretary also argues that the exceptions and allowances to the time schedules are materially less generous than those approved in *White*. Specifically, the Secretary points to the absence of a provision waiving the 90-day rule when additional evidence is sought. See *White*, supra, 559 F.2d at 860. However, as indicated above, we interpret the 90-day requirement to mean that a hearing will be scheduled and initially completed during the 90-day period. If, after holding this hearing, the administrative law judge determines in good faith that further medical consultation or evidence is needed in order to accurately make a determination of disability, such consultation or request for evidence may be diligently pursued beyond the 90-day limit without running afoul of the district court order and without requiring the payment of interim benefits. This interpretation is apparently conceded by appellees,[13] and, in any case, we believe it to be the correct one. It thus follows that appellant's objection to the absence of an exception for the procurement of additional evidence is misplaced.

We agree with the Secretary, however, that the district court abused its discretion in ordering that all SSI payments made to claimants whose hearings have not been held within the designated time periods be non-refundable even if the claimant is ultimately found to be ineligible.[14] In conclud-

ing that the order entered in *White* was an "equitable solution to the difficult problem of balancing administrative difficulties and wage earners' needs," this court in part relied on the fact that "the SSA is entitled to full recoupment for interim amounts paid . . . .." See 559 F.2d at 860. While not unmindful of the difficulties involved in allowing such recoupment, see *Goldberg v. Kelly*, 397 U.S. 254, 266, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), we note that the Secretary, where "equity or good conscience" dictates, apparently has discretion to forego recovery of overpayments. See 42 U.S.C. § 1383(b). Furthermore, appellees do not strongly contest this point.[15] Since we see no good reason for imposing a flat ban against SSA recoupment of windfall SSI payments, the order of the district court is modified to delete the non-refundable provision.

We have considered all of appellant's arguments and except as noted immediately above, find them to be without merit. The judgment of the district court is affirmed as modified.

---

13. See Brief for Appellees at 20.

14. This portion of the order has been stayed pending appeal.

15. Appellees state that they "would not argue too strongly against deleting the provision that the benefits be non-refundable, and leaving the order as in *White*, with the SSA entitled to seek recoupment for any interim amounts paid." See Brief for Appellees at 25.