Leon S. DAY, et al., Plaintiff-Appellee,

v.

Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant-Appellant.

No. 1195, Docket 82–6009.

United States Court of Appeals, Second Circuit.

Argued June 9, 1982.

Decided June 28, 1982.

John Cordes, Dept. of Justice, Civ. Div., Appellate Staff, Washington, D. C. (J. Paul McGrath, Asst. Atty. Gen., Washington, D. C., George W. F. Cook, U. S. Atty., Rutland, Vt., Donald A. Gonya, Asst. Gen. Counsel, Randolph W. Gaines, Deputy Asst. Gen. Counsel for Litigation, Verrell L. Dethloff, Jr., Alan M. Grochal, Robin F. Kaplan, A. George Lowe, Social Security Div., Dept. of Health and Human Services, Baltimore, Md., of counsel) for defendant-appellant.

Richard H. Munzing, Springfield, Vt. Vermont Legal Aid, Inc., for plaintiff-appellee.

Before FEINBERG, Chief Judge, CARDAMONE, Circuit Judge and SAND,* District Judge.

PER CURIAM:

The Secretary of Health and Human Services appeals from various orders of the United States District Court for the District of Vermont, James S. Holden, Ch. J., granting summary judgment in favor of a class of claimants [1] seeking disability benefits under Title II of the Social Security Act (the

* United States District Judge for the Southern District of New York, sitting by designation.

1. The class was certified on June 14, 1979 as: all present and future Vermont residents seeking to secure Social Security Disability benefits who, following an initial determination by the defendant that no disability exists, experienced an unreasonable delay in the scheduling of and/or issuance of decisions in reconsiderations and fair hearings.

Act), 42 U.S.C. § 401 et seq. We find that most of the arguments raised in this appeal are almost indistinguishable from those decided by us in earlier cases, see *Sharpe v. Harris*, 621 F.2d 530 (2d Cir. 1980); *Barnett v. Califano*, 580 F.2d 28 (2d Cir. 1978); *White v. Mathews*, 559 F.2d 852 (2d Cir. 1977), cert. denied, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978), and that, in any event, our prior decisions are controlling. Accordingly, we affirm the judgment of the district court.

## I.

The procedure for challenging an initial determination that a Vermont claimant is ineligible for Title II disability benefits is set out in the Act and regulations adopted thereunder, and is explained in greater detail in the district court's opinions dated December 28, 1979 and August 19, 1981. The claimant's first step is to request reconsideration of his claim at the District Office (DO) of the Social Security Administration (SSA). That office locates the claimant's folder (which, the district court found, is not always easy) and forwards it to the appropriate Disability Determination Agency (DDA). The claim is then subjected to de novo review, which often entails updating the file with new evidence gathered at the claimant's initiative or pursuant to a request of the DDA. When the DDA completes its reconsideration, the claim follows one of several routes. A case involving a "new" claimant (one who had not been pre-

viously receiving benefits) is rerouted to the DO and a reconsideration notice is sent to the claimant by the DDA either by computer or manually. The DDA may, however, delay sending notice while it undertakes a "quality assurance review" of its own, or sends the case to the Office of Disability Operations (ODO) in Baltimore, Maryland for a quality control review. A case involving cessation of payments to an "old" claimant (one who was previously receiving benefits) is always sent to ODO for a final review before notice of denial is sent to the claimant. In either case, once a claimant receives notice of an adverse determination on reconsideration, he is entitled to a fair hearing before an administrative law judge. The claimant is not, however, entitled to resort to federal court to reverse a denial of benefits until he has run the full gauntlet of administrative review.

In the district court, appellees claimed that two kinds of delay violated their constitutional rights under the due process clause of the fifth amendment and their statutory rights under the Administrative Procedure Act, 5 U.S.C. § 555(b)[2] and the Social Security Act, 42 U.S.C. § 405(b).[3] First, they maintained that SSA took an unreasonable amount of time to dispose of a claim once a claimant had made a request for reconsideration.[4] Second, they claimed that the time between a request for a hearing and the date of hearing was unreasonably lengthy.[5] In his December 1979 opin-

---

2. Section 555(b) provides in pertinent part that:
 With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it.

3. Section 405(b) provides in pertinent part that:
 Upon request by any such individual or upon request by a wife, divorced wife, widow, surviving divorced wife, surviving divorced mother, husband, widower, child, or parent who makes a showing in writing that his or her rights may be prejudiced by any decision the Secretary has rendered, he shall give such applicant and such other individual reasonable notice and opportunity for a hearing with respect to such decision, and, if a hearing is held, shall, on the basis of evidence

adduced at the hearing, affirm, modify, or reverse his findings of fact and such decision.
 In *White*, we interpreted "reasonable notice and opportunity for a hearing" as a right to a hearing within a reasonable time, 559 F.2d at 858, and the Secretary does not challenge this interpretation.

4. In named-plaintiff Day's case, the district court found that this delay amounted to 167 days; in plaintiff Maurais's case, it was found to be 215 days. Furthermore, the district court found these delays to be within the normal range of delays experienced by Vermont SSA claimants.

5. The district court found that in this regard Day experienced a 173-day delay and Maurais, a 65-day delay. Neither delay was found by the district court to be out of the normal range.

ion, Chief Judge Holden granted summary judgment in favor of appellees on the latter issue, finding that the unreasonable delay in scheduling hearings contravened the Social Security Act. In his August 1981 opinion, after considerable additional briefing, the judge came to the same conclusion on the reconsideration issue. He evaluated the delay there by the same standard used on the hearing issue because he reasoned that since "[t]he time necessary to complete a reconsideration is included in the time that the claimant must wait before he is afforded a hearing ... [u]nreasonable delays in the reconsideration procedures trench on the statutory duty to provide a hearing within a reasonable time."

Relying on our decisions in *Barnett* and *White*, Judge Holden next turned to fashioning relief for appellees' class. In a judgment entered in November 1981, the district court ordered that with certain significant exceptions,[6] reconsideration processing must be completed within 90 days of a request for reconsideration, and that with similar exceptions,[7] a hearing must be scheduled within 90 days of a request for hearing. Judge Holden then went on to order that interim disability payments be made, subject to the exceptions described above and to recoupment if the claimant is later found to be ineligible for disability payments, whenever no reconsideration determination is issued within 180 days of the request for reconsideration, whenever no hearing is held within 180 days of a prior request for reconsideration that is followed by a hearing request and whenever no hearing is held within 90 days of a request for a hearing.

## II

On appeal, the Secretary raises several arguments that are similar to those made in our earlier cases. First, he claims that the case is nonjusticiable because Congress has entrusted the administration of the Act to the Department of Health and Human Services. It is true that this argument, strengthened somewhat by the Seventh Circuit's reading of the decision in *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978), won the day for the Secretary in *Wright v. Califano*, 587 F.2d 345, 352–54 & 356 (7th Cir. 1978). But see *Smith v. Miller*, 665 F.2d 172 (7th Cir. 1981). A similar claim also gained him a partial victory in *Blankenship v. Secretary of HEW*, 587 F.2d 329, 335 (6th Cir. 1978). We, however, agree with the First Circuit's view that "while ... Congress must bear the ultimate responsibility for remedying problems in the administration of federal programs ... *cf. Vermont Yankee* ..., that does not mean that a judicial role is precluded where the statutory mandate is not being followed." *Caswell v. Califano*, 583 F.2d 9, 16 (1st Cir. 1978). This is particularly true when "the danger of judicial intervention is outweighed by the irreparable harm suffered by members of the plaintiff class who encounter unreasonable delays in gaining consideration of their applications." *Sharpe*, 621 F.2d at 531. See also *White*, 559 F.2d at 858–59.

Next, the Secretary argues that our previous decisions should not be followed

---

**6.** The district court excepted delays resulting from the following circumstances:

(a) The claimant offers new medical evidence or reports new medical treatment since his initial determination;

(b) The claimant agrees to undergo a consultative examination when one is suggested by the defendant;

(c) The claimant or his representative causes a delay by failing to provide information needed for reconsideration;

(d) The claimant or his representative requests a delay; or

(e) The delay is in some other way attributable to the aggrieved claimant or his representative.

**7.** The district court excepted delays resulting from the following circumstances:

(a) The claimant or his representative causes a delay by failing to provide information needed for adjudication;

(b) The claimant or his representative requests a delay;

(c) The claimant or his representative fails to appear for the scheduled hearing;

(d) The delay is in some other way attributable to the claimant or his representative.

because the increase in caseload and congressional "assumption of oversight" show that circumstances have changed significantly since the earlier cases were decided. As to the former argument, the increment in SSA's caseload is a variant of the claim made in *White* that the Secretary is precluded from adhering to a judicially mandated timetable by the "flood of claims," 559 F.2d at 859. As before, we sympathize with the severe problems that beset SSA, and we understand that Judge Holden's decision may have a significant impact on its operations. But the new statistics presented to us on this appeal do not persuade us to revise the position we took in *White*:

> Although what is reasonable depends upon a variety of circumstances, [the] statutory command should not be ignored. The disability insurance program is designed to alleviate the immediate and often severe hardships that result from a wage-earner's disability. In that context, delays of the better part of a year in merely affording an evidentiary hearing detract seriously from the effectiveness of the program. Perhaps this unfortunate impact might be diminished to a tolerable level if a high percentage of claimants seeking hearings before an administrative law judge were not actually entitled to benefits. But such hearings have led to reversals in more than half the cases heard. (Citation omitted.)

559 F.2d at 858. We also share the First Circuit's concern that "if the Secretary's resources truly are inadequate to the task, the more litigious of the applicants may gain an advantage over the less assertive." *Caswell*, 583 F.2d at 17. But we also agree with the First Circuit's conclusion:

> However, the vindication of almost every legal right has an impact on the allocation of scarce resources. And the courts, while mindful of the impact of remedies upon persons not before them, can hardly permit the legal rights of litigants to turn upon the alleged inability of the defendant fully to meet his obligations to others.

Id.

The Secretary's claim based on alleged congressional oversight is equally unpersuasive. While it is true that in the last five years Congress has involved itself heavily in the administration of this Act, it was also carefully examining the situation at the time of *White* and *Barnett*, see 559 F.2d at 859; 580 F.2d at 31. Moreover, evidence that Congress has refused to impose its own deadlines cuts both ways. Inactivity in the face of decisions imposing deadlines can also imply that Congress is satisfied that unjustifiable delay is being handled effectively by the courts. In any case, we feel that so long as Congress has not enacted clarifying legislation or removed the term "reasonable" from the statute, our duty is to vindicate plaintiffs' interest as we see it.

 The Secretary's final points are new. First, he claims that the court below erred in extending the doctrine of *White* and *Barnett* to delays in reconsideration because this level of administrative review is entirely a creature of the Secretary's discretion, and was adopted in response to Congress' concern for accurate determinations of entitlement to disability insurance. We disagree. Judge Holden was correct in finding that the only meaningful way to encourage prompt adjudication is to adopt a single remedial scheme incorporating all stages of review. Furthermore, the relief ordered was crafted with an eye towards the Secretary's concerns. Thus, the judge excepted from his order delay caused by the need to garner the fresh information required to assure accurate results.

 Finally, the Secretary claims that imposition of interim payments is impermissible under 42 U.S.C. § 405(i), which limits payments to those who have been certified by the Secretary "[u]pon final decision of the Secretary or upon final judgment of any court of competent jurisdiction, that [the] person is entitled to any payment or payments . . . ." This contention has been rejected before, see *White*, 559 F.2d at 861 (finding that § 405(i) is directed at "the

ordinary situation in which payments become due after favorable administrative adjudication, or judicial review," and does not "exclud[e] the possibility of interim payments ordered by a court exercising its remedial power"); *Barnett*, 580 F.2d at 33. Nonetheless, the Secretary now claims that the recent decision in *Schweiker v. Hansen*, 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981), gives his contention new force. We believe, however, that *Hansen* is distinguishable. In that case, social security claimant Hansen argued that the Secretary should be estopped from denying her benefits, for which she did not apply, because her failure to file a written application was due to misinformation given her by his representative. Our case involves neither estoppel nor a deficiency on the part of the claimant. All the claimants who have been accorded relief by the order below have, by definition, complied with the procedural requirements of the Act. Moreover, the interim payments at issue here flow from the district court's inherent powers to fashion a remedy, see *Caswell*, 583 F.2d at 17, and cases there cited, and not from an estoppel that prevents the government from raising a defense.

We have carefully reviewed all the arguments raised by the Secretary and find them without merit.[8] For the reasons stated above, we adhere to our belief that our prior decisions were correctly decided, and we therefore affirm the judgment of the district court.

---

**8.** Because we affirm on the ground that the delay violated appellees' statutory rights under 42 U.S.C. § 405(b), note 3 supra, we do not reach their contentions under the due process clause or the Administrative Procedure Act.