Carol A. CROSBY, et al., Plaintiffs,

v.

SOCIAL SECURITY ADMINISTRATION OF the UNITED STATES, et al., Defendants.

Civ. A. No. 81–675–T.

United States District Court, D. Massachusetts.

Nov. 16, 1982.

Robert B. Morton, Charles R. Capace, Paul R. Collier, III, Harvard Legal Aid Bureau, Cambridge, Mass., for plaintiffs.

John W. Laymon, Asst. U.S. Atty., Boston, Mass., for defendants.

OPINION

TAURO, District Judge.

Plaintiffs challenge as unlawful and unconstitutional defendants' delay in processing and deciding claims for disability bene-

fits under Title II (Social Security Disability Insurance) and Title XVI (Supplemental Security Income) of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, 1381 *et seq.* (the "Act"). Plaintiffs are a class of Massachusetts residents who have applied for disability benefits pursuant to the Act.[1] Named as defendants are the Social Security Administration (the "SSA"), the Department of Health and Human Services ("HHS"), and the Secretary of HHS (the "Secretary").

Plaintiffs rely on three theories in support of their claim for declaratory and injunctive relief:[2] (1) that defendants' delays in hearing and deciding disability applications violate the Act, specifically 42 U.S.C. §§ 405(b) and 1383(c); (2) that the delays violate the Administrative Procedure Act, 5 U.S.C. §§ 555(b) and 706(1); and (3) that the delays violate their due process and equal protection rights under the Fifth Amendment of the United States Constitution.[3] Plaintiffs assert jurisdiction is conferred on this court by 42 U.S.C. §§ 405(g) and 1383(c), 28 U.S.C. §§ 1361 and 1331, and 5 U.S.C. §§ 701–704 and 706.

At issue here are the parties' cross motions for summary judgment, as well as defendants' motion to vacate an interim order issued by this court.[4]

## I. Factual Background

Applicants for disability benefits under the Act receive an initial eligibility determination. Those aggrieved by that determination may request reconsideration, and receive a *de novo* review. Should the disability application still be denied after reconsideration, the claimant may ask for a hearing before an administrative law judge ("ALJ"). *See* 42 U.S.C. §§ 405(b) and 1383(c)(1). The delays involved in the ALJ hearing stage underlie this litigation.

The complaints of plaintiffs here echo those of disability applicants in other jurisdictions. In one case, *Blankenship v. Secretary of HEW,* 587 F.2d 329 (6th Cir.1978), the Secretary had agreed to promulgate regulations setting a 165 day time limit from hearing request to hearing decision.[5] The proposed regulations promised to moot the issues in *Blankenship* and, thereby, obviate the necessity for cases such as this.

Subsequently, the Secretary and the SSA backed away from their agreement to promulgate remedial regulations. Indeed, the Secretary has asked the *Blankenship* court to release him from his agreement to promulgate regulations.[6] Similarly, the defendants here seek to have this court lift its interim order calling for a 165 day time

---

1. On May 4, 1981, the court certified a class consisting of:

   All those present and future individuals residing in the State of Massachusetts who have applied for disability benefits pursuant to Title II and/or Title XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and 1381, *et seq.*; have received notice of Initial Determination denying their application for benefits; have received a Notice of Reconsideration determination from the Defendants affirming the initial denial of benefits; who have filed a timely Request for Hearing to review and appeal from the initial adverse decisions; and who have not had a hearing held within ninety (90) days from the date of the Request for Hearing, and/or who have not had a decision rendered in such a hearing for benefits within one-hundred and twenty (120) days from the date of Request of Hearing.

2. Plaintiffs seek declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

3. Plaintiffs state as a fourth "cause of action" that defendants are collaterally·estopped from

denying the violations alleged in the first three causes of action. This contention is subsidiary to the three primary causes of action.

4. On June 8, 1981, the court ordered adoption of the defendants' proposed interim plan, that set a time limit of 165 calendar days (with certain excludable time) for the period between hearing requests and hearing decisions. The court also ordered periodic reporting to the court by the defendants in order to monitor compliance with this interim order.

5. This court's June 8, 1981 interim order was based on these proposed regulations.

6. In response, the district court in *Blankenship* mandated that the Secretary issue hearing decisions within 180 days of hearing requests. 532 F.Supp. 739 (W.D.Ky.1982). The district court's order was stayed pending appeal, and the case is now on appeal before the Sixth Circuit.

limit between hearing request and decision. Defendants' current position is that *no* time limit should be imposed. Rather, the defendants now suggest that they should be permitted to set their own "goals", and should be left alone to do the best that they, in their sole judgment, believe they can do to eliminate or reduce the complained of time delays.

Meanwhile, the plaintiff class continues to suffer serious delays in receiving hearings and decisions on their claims. According to defendants' computer printouts, the *average* processing time from hearing request to decision in Massachusetts, as of March 1981, was 199 days. Notwithstanding the court's June 8, 1981 interim order, delays between hearing requests and decisions exceeded 165 days in more than half the cases processed from December 1981 to June 1982.[7]

The significance of these delays is underscored by the fact that, in 1981, sixty percent of those who challenged initial determinations of ineligibility for benefits were actually found entitled to those benefits after a hearing before an ALJ. Even that figure, however, understates the total percentage of the plaintiff class who are *eventually* found entitled to benefits after later review by the Appeals Council and the federal court.

Abandoning the position originally adopted by the Secretary in *Blankenship,* the defendants now argue that, due to rising levels of hearing requests, the 165 day time limit is no longer realistic. Indeed, defendants' statistics do show a rising level of case filings. But, they also show that defendants have not hired additional ALJs to handle this increased caseload. As of December 1, 1979, there were 19 ALJs assigned to conduct disability hearings for Massachusetts. As of May 31, 1982, the number of ALJs was 20. For the period June 7, 1981 to November 30, 1981, the figure had dropped to 18.

## II. Justiciability

■ The threshold issue to be resolved here is defendants' claim that plaintiffs' complaint is non-justiciable. This argument rests on two related grounds. First, relying on *Wright v. Califano,* 587 F.2d 345 (7th Cir.1978), defendants argue that Congress has charged HHS with administration of the Act, and that judicial intervention is, therefore, inappropriate. Second, they assert that Congress has exercised continuing oversight with regard to the Act, and has failed to impose any time limits on hearings or hearing decisions. From this, defendants would draw the conclusion that judicially imposed time limits are inappropriate. These arguments have been rejected by the First Circuit and several other courts.

In *Caswell v. Califano,* 583 F.2d 9 (1st Cir.1978), the First Circuit addressed both ends of defendants' present argument. The court of appeals recognized congressional concern regarding, and oversight of, the SSA and its administration of the Act. Nevertheless, the *Caswell* court held, this "does not mean that a judicial role is precluded where the statutory mandate is not being followed .... it is clear that no violence to the principle of the separation of powers arises from judicial efforts to enforce a congressional mandate." *Id.* at 16. Similarly, *Caswell* rejected the suggestion that the judiciary must defer to the Secretary's and the SSA's method of handling hearings and administrative procedure. While pointing out that the Secretary has substantial discretion, the court stated, "equally clear is the Secretary's statutory duty to provide a hearing at a meaningful and reasonable time.... Where the delays exceed the bounds of reasonableness, the Secretary may be judicially required to act with greater dispatch so as to meet his statutory obligation." *Id.* at 15.

---

7. The defendants' most recent status report, filed pursuant to the court's interim order, shows that for the period December 1, 1981 to May 31, 1982, 736 cases were processed (hearing request to hearing decision) within 165 days, and 746 cases were not processed within 165 days. In other words, more than half the cases processed during this most recent period were in violation of the court's interim 165 day order—an order based on the Secretary's proposed regulations submitted to the *Blankenship* court.

Most recently, the Second Circuit, relying on *Caswell,* also dismissed the defendants' justiciability arguments. *Day v. Schweiker,* 685 F.2d 19, 22–3 (2d Cir.1982). As *Day* points out, the Secretary's argument cuts both ways. It is true that Congress, in its exercise of oversight, has not imposed explicit time limits on hearings and hearing decisions. At the same time, however, the federal courts have for several years been imposing time limits, and Congress has not amended the Act so as to preclude time limits or to remove the statutory basis for these limits. This court, then, is unpersuaded by the defendants' justiciability arguments, and turns now to the merits of the case.

### III. Merits

Under § 205(b) of the Act, 42 U.S.C. § 405(b), an applicant under Title II who is denied disability benefits may request a hearing, and the Secretary must give such an applicant "reasonable notice and opportunity for a hearing ...." Section 1383(c)(1) of 42 U.S.C. contains identical language with respect to applicants for disability benefits under Title XVI. The Administrative Procedure Act provides that "within a reasonable time, each agency shall proceed to conclude a matter presented to it ...," 5 U.S.C. § 555(b), and mandates that a reviewing court "compel agency action unlawfully withheld or unreasonably delayed ...." 5 U.S.C. § 706(1). The First Circuit has held that these statutory provisions impose on the Secretary "a statutory duty to hold hearings within a time that is reasonable under the circumstances ...." *Caswell v. Califano, supra* at 15. *See also Day v. Schweiker, supra; Barnett v. Califano,* 580 F.2d 28 (2d Cir.1978); *White v. Mathews,* 559 F.2d 852 (2d Cir. 1977); *Blankenship v. Secretary of HEW,* 587 F.2d 329 (6th Cir.1978). *Cf. Wright v. Califano,* 587 F.2d 345 (7th Cir.1978).[8]

Defendants do not dispute that they must meet this statutory standard. Rather, they contend that so long as they are exercising what they consider to be their best efforts in reducing delays, then whatever delays do exist are *per se* reasonable. The defendants argue that rising caseloads and a shortage of ALJs make it impossible for them to hold hearings and issue decisions any more expeditiously, and so their current performance must be deemed reasonable. While more than sympathetic with the plight of our hardworking ALJs, this court cannot accept the rationale of defendants' legal argument.

In order for the statutory obligation that hearings be held and decisions rendered within a reasonable time to have any effect, the standard for review must be more stringent than that of a mere best efforts self appraisal by defendants. In almost every previous case attacking the delays suffered by disability claimants in receiving hearings and decisions, the Secretary and the SSA have argued that increasing caseloads and staffing shortages make it impossible for them to do any better. And these cases, while recognizing the difficulties faced by the defendants, have held that the court must decide for itself whether, as *Caswell* put it, "the plaintiffs have been afforded a 'reasonable ... opportunity for a hearing.'" *Caswell v. Califano, supra* at 16 [citations omitted].[9]

■ On this record, the court finds that defendants have not met their statutory obligation to provide plaintiffs with hearings and decisions within a reasonable time. There is no doubt that rising caseloads and staffing problems have an impact on defendants' efforts to afford plaintiffs timely disability hearings and decisions. But the defendants' administrative problems pale

---

8. More recently, the First Circuit has reaffirmed its commitment to affording disability claimants the right to expeditious consideration of their claims. *Alameda v. Secretary of HEW,* 622 F.2d 1044 (1st Cir.1980) (upholding the power of a district court to order the Secretary to submit a timely brief in a Social Security

appeal pending before the district court). The *Alameda* court explicitly recognized "the legitimate expectations of social security claimants for expedition." *Id.* at 1049.

9. A hearing time limit of 90 days was approved by the First Circuit in *Caswell.*

when compared to "the severe hardships which must obviously attend the erroneously delayed payment of disability benefits . . . ." *Caswell, supra* at 18. The defendants' own statistics demonstrate that, in 1981, more than sixty percent of the plaintiff class members were found eligible for disability benefits after a hearing. Many of these persons had to struggle merely to survive while they suffered delays in receiving benefits to which they were entitled.

When this case first came before this court, defendants suggested 165 days as a maximum reasonable delay between hearing requests and hearing decisions. That time limit was to have been adopted in regulations proposed by defendants at the behest of the *Blankenship* court. Nonetheless, defendants failed to meet even their own proposed timetable in more than half the cases processed in Massachusetts between December 1981 and May 1982. Now, defendants want to be relieved of any time limit in processing these claims. Their position is simply not consistent with Congress' statutory mandates.

The court cannot relieve defendants from meeting their statutory obligations. The granting of such relief is the exclusive prerogative of the Congress. The apparent alternatives available to the Congress are either to lower standards of compliance (subject to any constitutional bounds), or provide defendants with sufficient personnel to provide hearings and decisions within a meaningful and reasonable time.

## IV. Relief

In fashioning relief, "the district court possesses considerable discretion in formulating an equitable remedy to vindicate plaintiffs' right to a hearing within a reasonable time." *Caswell, supra* at 17. This court seeks to fashion a remedy that will balance efforts to afford plaintiffs their rights with an appreciation of defendants' chronic administrative problems.

At oral argument, defendants stated as their "goal" a maximum period of 180 days from hearing request to decision. Coincidentally, a 180 day limit was ordered by the district court in *Blankenship v. Secretary of HHS,* 532 F.Supp. 739 (W.D.Ky.1982). Given that apparent meeting of the minds between the defendants and another district court, this court adopts a 180 calendar day limit as the maximum acceptable delay between hearing requests and decisions. This is not to suggest that such a delay is desirable. The 180 day limit is to be considered the *maximum* reasonable delay.

In keeping with the structure of the court's interim order, the 180 day time limit shall be extended where:

(a) the claimant or his representative causes a delay by his failure to provide information essential for adjudication;

(b) the claimant or his representative requests a delay;

(c) the claimant or his representative fails to appear for a scheduled hearing;

(d) the administrative law judge, as a result of evidence adduced at the hearing, or in the course of post-hearing review, in good faith determines that a consultative medical examination or additional medical evidence in the possession of third parties is required; provided that such additional material shall be obtained with due diligence;

(e) the delay is in some other way directly attributable to the action or omission of the claimant or his representative;

(f) the case is reassigned after a hearing has been held due to the unavailability of the administrative law judge who held the hearing.

Any extension of the 180 day time limit shall be limited to that period of delay directly caused by one of the six situations specified above. The above definition of "excludable time" parallels the exceptions contained in the defendants' proposed interim plan setting a 165 day time limit (that was adopted as the court's interim order), and the exceptions to time limits imposed by other jurisdictions in similar cases. *See,*

*e.g., Blankenship v. Secretary of HHS*, 532 F.Supp. at 744; *Barnett v. Califano, supra* at 30. The parties shall have sixty days, should they wish, to propose modifications to the definition of excludable time set out above.

The court further orders that the defendants pay interim benefits, subject to recoupment, to claimants who have not received hearing decisions within 180 calendar days (not including the "excludable time" identified above) of their hearing requests. The defendants' failure to comply, in a majority of cases, with the court's interim order setting a time limit of 165 days highlights the need for the award of interim benefits. As the district court stated in *Blankenship, supra*, "[w]ithout such a requirement, this court's orders will have no teeth and no remedy will be available to the plaintiffs, except the unsatisfactory one of contempt proceedings against the Secretary." 532 F.Supp. at 745. The record of the present case, subsequent to the entry of the court's interim order, amply demonstrates the wisdom of that observation.

Defendants contend that the court does not have the power, under the Act, to award such conditional interim benefits. They point in particular to 42 U.S.C. § 405(i), which provides that the Secretary shall certify a claimant's entitlement to payments "[u]pon final decision of the Secretary or upon final judgment of any court of competent jurisdiction, that any person is entitled to any payment or payments under this subchapter . . . ." Defendants draw from this language the conclusion that under no circumstances may benefits be paid unless a person has been found by the administrative or appeals process to be individually entitled to such payments. Such a reading, however, is an unwarranted contraction of the "considerable discretion" that the court possesses in fashioning an equitable remedy. *Caswell, supra* at 17. As the Second Circuit stated in *White v. Mathews, supra*, 42 U.S.C. § 405(i)

is plainly directed at the ordinary situation in which payments become due after favorable administrative adjudication, or judicial review under § 405(g). We do not read § 405(i) as excluding the possibility of interim payments ordered by a court exercising its remedial power. 559 F.2d at 861.

*See also Barnett v. Califano, supra; Day v. Schweiker, supra.* Section 405(i) describes only the routine procedure for processing and granting Social Security claims. It is not addressed to the equitable and remedial powers of the court.

Defendants also rely for support of their argument on a summary of a proposed amendment to the Act inserted into the Congressional Record by Congressman J.J. Pickle.[10] *See* 128 Cong.Rec. H633 *et seq.* One part of the proposed amendment would provide that no disability benefits may be paid until there is "a final determination of . . . entitlement" to the benefits. Congressman Pickle's summary states that this part of the proposed amendment would emphasize that courts should not award interim benefits where no individual final determination of entitlement to benefits has been made. Notwithstanding the defendants' reliance on this statement, the introduction of this amendment undercuts defendants' argument. The proposed amendment demonstrates Congress' awareness of the activity of the courts in fashioning remedies to cope with unreasonable delays in the Social Security hearing process. Despite this awareness, Congress has yet to enact Congressman Pickle's proposed amendment. In discussing and affirming the propriety of awarding interim benefits, the Second Circuit noted that "Congress can always assert its power to give the district courts more specific direction." *White v. Mathews, supra* at 861. Until then, the district courts retain their considerable discretion in fashioning equitable remedies.

---

**10.** The proposed amendment was originally offered as H.R. 5700. That bill was subsequently withdrawn, but was resubmitted as H.R. 6181.

Congressman Pickle's summary was prepared for H.R. 5700.

Finally, defendants argue that the award of interim benefits is precluded by the reasoning of *Schweiker v. Hansen,* 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981). In *Hansen,* a potential claimant for Social Security benefits was discouraged from applying for aid because of misinformation from an employee of the SSA that she (the potential claimant) would not be eligible for benefits. Some time later, the potential claimant did apply and was found eligible. She then sought retroactive benefits beyond those authorized by statute, contending that the fact that the SSA employee had misinformed her as to her eligibility should estop the SSA from denying retroactive benefits. The Supreme Court rejected the estoppel argument. The Court stated that only a claimant who had filed a written application was eligible to be considered for benefits, and that the SSA employee's errors were not serious enough to estop the SSA from insisting on compliance with the written application requirement. *Schweiker v. Hansen, supra* at 790, 101 S.Ct. at 1471–72.

*Hansen* is distinguishable from the present case. The Court in *Hansen* was not confronted with the question of the scope of a district court's remedial powers. Rather, it was concerned only with the contention that alleged negligence or error by the SSA should estop the SSA from raising a claimant's own failure to file a written application as a ground for denial of benefits. The Second Circuit considered defendants' arguments, and specifically held that *Hansen* does not bar the award of interim benefits as part of a remedy for unreasonable delays in hearings and decisions. *Day v. Schweiker, supra* at 24. As the *Day* court pointed out,

[o]ur case involves neither estoppel nor a deficiency on the part of the claimant.... [T]he interim payments at issue here flow from the district court's inherent powers to fashion a remedy, see *Caswell,* 583 F.2d at 17, and cases there cited, and not from an estoppel that prevents the government from raising a defense. 685 F.2d at 24.

The court here has found that the award of interim benefits is necessary in order to ensure the plaintiffs an effective remedy. Defendants have demonstrated, by their admitted failure to comply with the court's interim order in this case, that a remedy of time limits without the prospect of interim benefits is not sufficient. If defendants comply with the 180 day limit, no interim benefits need be paid. Should interim benefits be awarded, they would be subject to recoupment, given a finding of ineligibility—or offset should the claimant be found eligible. This remedial scheme is certainly within the court's "considerable discretion in formulating an equitable remedy." *Caswell, supra* at 17.

In order for the court to monitor defendants' performance, defendants will be required to submit status reports every six months. These reports will outline compliance with the court's order, as well as changes in circumstances affecting such compliance. Defendants will also be required to include, when sending an acknowledgment to a claimant of receipt of request for hearing, a notice outlining the claimant's rights under the court's order. Similarly, should any payments of interim benefits be necessary, such payments shall be accompanied by a notice explaining that such interim payments are subject to recoupment and possible offset. The language of these notices shall be agreed upon by the parties and submitted to the court within thirty days of the accompanying order.

The relief granted by the court's order will supersede the interim order of June 8, 1981, and will apply retroactively. In order that defendants may be given an opportunity, prior to the imposition of interim benefits, to process the claims of those class members who have already waited more than 180 days since requesting a hearing, that part of the court's remedy providing for interim benefits shall not take effect until sixty days from the date of the court's order. Similarly, the requirements of notices to claimants provided under the order shall not take effect until thirty days from

the time the parties submit to the court the agreed upon language of these notices.[11]

An order will issue.

### ORDER

For the reasons stated in an opinion issued this date, the court hereby orders that judgment be entered as follows:

(1) Summary judgment is granted in favor of the plaintiff class.

(2) The plaintiff class, as certified by the court on May 4, 1981, consists of:

All those present and future individuals residing in the State of Massachusetts who have applied for disability benefits pursuant to Title II and/or Title XVI of the Social Security Act, 42 U.S.C. §§ 401, et seq., and 1381, et seq.; have received notice of Initial Determination denying their application for benefits; have received a Notice of Reconsideration determination from the Defendants affirming the initial denial of benefits; who have filed a timely Request for Hearing to review and appeal from the initial adverse decisions; and who have not had a hearing held within ninety (90) days from the date of the Request for Hearing, and/or who have not had a decision rendered in such a hearing for benefits within one-hundred and twenty (120) days from the date of Request for Hearing.

(3) The defendants are permanently enjoined, ordered, and directed to issue a written hearing decision by an administrative law judge (ALJ) on any claim by a class member for disability benefits under Title II and/or Title XVI of the Social Security Act (42 U.S.C. sections 401 et seq. and 1381 et seq.) within one hundred and eighty (180) calendar days of the claimant's (class member's) filing of a request for an administrative hearing.

(4) Exception to the time limit set out in paragraph (3) above may be made where:

(a) the claimant or his representative causes a delay by his failure to provide information essential for adjudication;

(b) the claimant or his representative requests a delay;

(c) the claimant or his representative fails to appear for a scheduled hearing;

(d) the administrative law judge, as a result of evidence adduced at the hearing, or in the course of post-hearing review, in good faith determines that a consultative medical examination or additional medical evidence in the possession of third parties is required; provided that such additional material shall be obtained with due diligence;

(e) the delay is in some other way directly attributable to the action or omission of the claimant or his representative;

(f) the case is reassigned after a hearing has been held due to the unavailability of the administrative law judge who held the hearing.

These exceptions shall lengthen the time limit set out in paragraph (3) only to the extent of the actual delay directly caused by one of the six specified circumstances. The parties shall have sixty days, should they wish, to propose modifications to the definition of excludable time set out above.

(5) The time period set out in paragraph (3) shall commence with the date of receipt by the defendants of a formal written request for hearing filed by the claimant or his representative, and shall be computed in accordance with Rule 6(a) of the Fed.R. Civ.P.

(6) Beginning with the 61st day after the date of this order, the defendants are permanently enjoined, ordered and directed to grant prospective interim payments to class members who do not receive (or have not received) hearing decisions within the time limit set out in paragraph (3) of this order. Such interim payments shall be in the monthly amount equivalent to the benefits to which the claimant would be entitled were he declared eligible. Interim payments shall commence no later than fifteen

---

11. Given the court's resolution of plaintiffs' statutory claims, consideration of their constitutional claim is unnecessary.

(15) days after the expiration of the hearing decision time limit, and shall cease (a) upon the mailing of a written decision of an ALJ that is unfavorable to the claimant, or (b) upon the commencement of payment of benefits to the claimant pursuant to a favorable hearing decision.

Nothing in this order shall be construed to require retroactive disability benefits prior to the issuance of a favorable decision by an ALJ. In the event of a decision favorable to a claimant, any interim payments made to the claimant shall be deducted from the total retroactive amount due under such favorable decision. In the event of a decision unfavorable to a claimant, the defendants shall have the right to recover any interim payments that may have been made to the claimant, for which the claimant is found ineligible, pursuant to standard overpayment procedures.

(7) Interim payments pursuant to this order shall be suspended if the claimant refuses to cooperate in attending a scheduled hearing or in going to a consultative examination or in obtaining any other necessary evidence requested. Such suspension shall be for the period of any delay caused by the claimant's or his representative's actions or omissions herein.

(8) The defendants shall report to the court, with copy to plaintiff's counsel, every six (6) months, beginning six (6) months from the date of this order, the following information:

(a) the number of ALJs assigned to administration offices which process significant numbers of applications by Massachusetts residents for Title II and/or Title XVI benefits, and the change, if any, from the prior number so serving;

(b) the number of applications for benefits made within the preceding six months and the change in the total number of applications from the six months' period immediately preceding the reported period;

(c) any changes in eligibility requirements and their projected effect on caseload and speed of disposition;

(d) any significant changes in the numbers of support personnel and the projected impact on caseload of those changes;

(e) the steps defendants have taken to recruit and hire ALJs and support staff adequate to reduce hearing processing times;

(f) the total number of cases on file compared with the number of cases on file at the end of the prior six months' period;

(g) the total number of cases in which the adjudication was completed within 180 days, the total number of cases in which the adjudication was not so completed, and the reason for the failure to comply in those cases where the time limit is not met; and

(h) the number of cases where the defendants make interim payments as provided in paragraph (6) of this order; the number of months for which the defendants make these payments in such cases; and, if the defendants have not made interim payments specifically conforming to the requirements of paragraph (6) of this order, an explanation of why such payments have not been made for each such case, and the efforts defendants are engaged in to make such payments.

(9) Beginning with requests for hearings received on the 61st day after the date of this order and continuing thereafter, the defendants are directed to notify in writing each claimant requesting an ALJ hearing of his or her rights under this order. Such written notice may be given to the claimant personally or may be included by attachment to the defendants' acknowledgment of the claimant's request for hearing, but shall not require a separate mailing by the defendants. In addition, in the event that interim payments are required pursuant to this order, such payments shall be accompanied by a written notice informing the claimant that the payment is an interim payment subject to recoupment or offset.

The parties will provide the court with agreed upon language for the notices described in this paragraph within thirty (30) days of the date of this order.

(10) This order shall apply to all class members, including those whose cases are currently pending.

(11) The court shall retain jurisdiction over this matter for all purposes, pending further order of the court.

It is so ORDERED.